CASE 29—PETITION ORDINARY—JUNE 18.

# Chamberlin & Tapp vs. Brewer, &c.

APPEAL FROM HENRY CIRCUIT COURT.

1. "Levied November 7, 1863, upon two crops of tobacco, supposed to be sixteen thousand pounds in house, property of W. Barton and D. Adams, for the satisfaction of the within. *Stayed by order of James Roberts, attorney for plaintiff*, November 7, 1863.

"WM. E. BERRYMAN,
"*D. S. for W. J. Brewer, S. H. C.*"

The stay in the above return is held to refer to, and to operate as, a stay of the levy, and not a stay of the execution, and that the levy was not thereby discharged. (*Daviess vs. Myers*, 13 *B. Mon.*, 512.) See act of December 20, 1865 (*Myers' Sup.*, 755), requiring consent to the stay to be in writing, &c., after January 1, 1867.

2. If the return of a sheriff is ambiguous, it is susceptible of explanation by other evidence.

3. If the return of a sheriff is unambiguous, extraneous evidence may be introduced to contradict it, and to show its falsity, in a suit directly against the sheriff and his sureties. (*Caldwell vs. Harlan*, 3 *Mon.*, 350; *Thompson vs. Morris*, 2 *B. Mon.*, 35.)

4. "All motions allowed by this chapter must be commenced within two years after the cause of such motion accrues." (*Subsec. 2 of sec. 5, art. 18, chap. 36*, 1 *Stanton*, 494.) The two years' bar to motions, as

above, cannot be construed as embracing *suits* against sheriffs and their sureties.

5.   Plea of *non est factum* by sureties in the sheriff's bond, "that, when they signed the sheriff's bond, the name of D. V. Brewer was to it as a security; that they signed and acknowledged it in presence of the county court, which, together with W. J. Brewer, the principal, represented that said D. V. Brewer had signed the bond, whereas he had not signed it; that it was not his act and deed, and that he was not bound by reason thereof; wherefore, they say it is not their act and deed, and they are not bound thereon." To this plea the circuit court sustained a demurrer. *Held by the court of appeals*—"That the answer, in this case, did present a good defense of *non est factum* by the sureties, and that the demurrer to their answer should have been overruled." (*Seely vs. The People*, 27 *Ills. Rep.; Rawlings vs. United States*, 4 *Cranch*, 219; and cases cited in vol. 2, new series, 1862, 1863, *American Law Register, pages* 346–7.)

PRYOR & BARBOUR,                              ·For Appellants,

CITED—

15 *B. Mon.; Walker vs. McKnight.*

JOHN M. HARLAN,                                  For Appellees,

CITED—

*Act of Dec.* 20, 1865, *Myers' Sup.*, 755.

8 *B. Mon.*, 412; *Eldridge vs. Chambers.*

13 *B. Mon.*, 512; *Daviess vs. Myers.*

4 *Bibb*, 338; *Burks, &c., vs. Bass.*

*Revised Stat.*, 1 *Stant.*, 475, 492, 493, 495; 2 *Ib.*, 339.

1 *Mon.*, 144; *Hawkins, &c., vs. Commonwealth.*

27 *Ills.; Seely vs. The People.*

22 *Kerr's Ind. Rep.*, 399; *Pepper vs. The State, ex rel. Harvey.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

W. E. Berryman, as deputy for W. J. Brewer, who was sheriff of Henry county, had in his hands an execution in favor of Chamberlin & Tapp against W. Barton and D. Adams, upon which he made this indorsement:

" Came to hand September 18, 1863 ; levied November 7, 1863, upon two crops of tobacco, supposed to be sixteen thousand pounds in house, property of W. Barton and D. Adams, for the satisfaction of the within. *Stayed by order of James Roberts, attorney for plaintiff, November 7, 1863.*               Wm. E. BERRYMAN,

"*D. S. for W. J. Brewer, S. H. C.*"

February 6, 1864, a *venditioni exponas* issued, and was placed in his hands, directing him to sell said tobacco so levied upon by said execution ; and, whilst this writ was in his hands, the defendants paid him the money, which he paid over to his principal, Brewer, but which has never been paid over to the plaintiffs in the executions.

This suit is brought to recover the principal sum, with damages, from the sheriff and his securities in his official bond.

The securities pleaded *non est factum;* also, that the execution first in Berryman's hands had been stayed by plaintiffs, which had discharged the levy, and that there was no property levied when the *venditioni* issued; hence it was a nullity, and the collection of the money by Berryman, and its payment to Brewer, was not an official act for which his securities were liable.

There are also some other questions as to the amount of damages.

The plea of *non est factum* to which a demurrer was sustained and exceptions, avers that when they signed the sheriff's bond, the name of D. V. Brewer was to it as a security ; that they signed and acknowledged it in the presence of the county court, which, together with W. J. Brewer, the principal, represented that said D. V. Brewer had signed the bond, whereas, he had not signed it; that it was not his act and deed, and that he was not bound by reason thereof; wherefore,

they say it is not their act and deed, and they are not bound thereon.

But, as a demurrer had been sustained to this, the cause was submitted to the circuit judge to try the issue upon the other defense set up.

The court adjudged that the return made on the first execution discharged the levy; therefore, there was no estate in the sheriff's hands to be sold; consequently, the *venditioni* was a nullity, and no money was collected by Brewer as sheriff, nor had he personally collected for plaintiffs any money; therefore, his securities were not responsible, neither was he under any personal responsibility to plaintiffs, and dismissed their suit; from which judgment they prosecute this appeal.

The first question to be decided is, did the sheriff's return necessarily import a stay of the execution, rather than the levy; and if the former, could other evidence be heard in this suit to contradict it? For, if the latter, according to the rule in *Daviess vs. Myers* (13 *B. Mon.*, 512), the levy would not be discharged. The immediate preceding sentence, or member of the sentence, shows a *levy* November 7, 1863, to satisfy the execution; and, of the very same date, the important sentence is added, "*Stayed by order of James Roberts.*" What was stayed, the execution or levy? Even grammatically, it is hard to determine that the word "*stayed*" referred to *execution* rather than *levy;* but it being done on the same day, and, as the indorsement imports, at the same time of the levy, the legal conclusion would seem to be that the object was to obtain a lien by the levy, and then stay it, and not the execution, especially, as no reason appears why the levy should be made, and then immediately discharged by a stay of the execution. Beside, the subsequent conduct of both the plaintiff and de-

fend'ants in the execution, and the officer, harmonizes with this construction; but is inconsistent with the other.

If it be regarded, however, as ambiguous, then it is susceptible of explanation by other evidence; but if not ambiguous, but means a stay of the execution, then we think the current of authority justifies the introduction of extraneous evidence to contradict it and show its falsity, in a suit directly against the sheriff and his securities; and that the evidence connected with the subsequent conduct of the parties and officer, shows, to a reasonable certainty, that it was the levy, and not execution, that was stayed.

In *Caldwell vs. Harlan* (3 *Mon.*, 350), this court, as early as the year 1826, held that a return, upon an execution by the sheriff, "received on this execution one thousand eight hundred and four dollars and fifty-five cents; execution satisfied the 25th of May, 1818," did not preclude the appellee, who was plaintiff in assumpsit, from showing that no money was paid by the defendants in the execution, but that the real transaction was, that the plaintiffs in the execution, being indebted to her, it was agreed that the defendants in the execution should become paymaster to her, and she would release the plaintiffs in execution on their indebtedness; and, thereupon, they released the defendants in the execution, which caused the sheriff to make said return.

The court said: Nor can the evidence offered be incompetent because it goes to contradict the record of the sheriff's return. It is true, a sheriff's return is, and often has been, held conclusive between the parties to the writ. It may also be held conclusive against the sheriff himself, although either party in a proper action brought against the sheriff may be permitted to prove it false; and, in a subsequent part of the opinion, they decide, that, under

the peculiar facts, the sheriff was a competent witness, and could state the real transaction, though it did contradict his official return.

And in *Thompson vs. Morris* (2 *B. Mon.*, 35), this court held, that the sheriff's return of " not found " upon a process could be disproved by a party to the suit, so as to prevent an abatement on mere motion, either upon the ground of its falsity or that the plaintiff's attorney had prevented its execution by getting the process out of the sheriff's hands the morning of the return day, and thereby preventing the sheriff from executing it, though he saw the defendant before the actual return of the process.

Whilst, as to the parties to a suit or execution, the return of the sheriff has been adjudged conclusive, yet it has not been so adjudged, so far as we know, in a suit against the sheriff for official delinquency, though no specific averment of a false return may have been made, nor have we been referred to such authority. Whilst officers' returns should be regarded as strong *prima facie* evidence, even in their own behalf, requiring satisfactory evidence of falsity to overturn them, yet we perceive no principle of law nor of public policy which should make them unassailable and conclusive in their own behalf in a suit against them for official delinquency, in which such returns may be used as evidence only, though it be not a suit for a false return.

The levy and the stay were of the same date; and though it was some time after the return of the execution before the *venditioni* was sued out, yet the defendants made no motion to quash it, but raised the money out of the very tobacco levied on, and discharged it by an actual payment to the officer, which, connected with Roberts' testimony that he only authorized a stay of the

sale of the tobacco for the purpose of giving the defendants in the execution an opportunity to prepare it for market, and never did authorize a stay of the execution, renders it reasonably certain that a return of the execution, as stayed by his authority, was unauthorized and untrue.

So we think the circuit judge misapprehended both the law and facts of this case,. and, because thereof, the judgment must be reversed.

This cause of action arose previous to the enactment of December 20, 1865, to take effect January 1, 1867 (*Myers' Supplement*, 755), requiring the consent in writing of plaintiffs in execution, &c., before the officer could return it stayed by his order, and is unaffected by it.

As there are other questions involved which must be settled on another trial, to which our attention has been directed, it is quite as well to settle them now.

By *article* 18, *chapter* 36, 1 *Stanton's Revised Statutes*, 492–3–4, sheriffs are held liable in different sums for various derelictions of duty, which may be recovered by motion, some requiring one number of days' notice, some another, and some of which can be recovered by either suit or motion.

By section 1, a penalty of from five to twenty dollars may be recovered by either plaintiff or defendant in execution for an unreasonable delay in advertising the sale of property levied, the officer having ten days' notice; and besides this, the officer may be held liable on action for any actual damages to either party.

By section 2, a party to an execution or attachment, on a decree in chancery, may recover by motion, on three days' notice, a penalty not exceeding fifty dollars, for not returning by the return day thereof.

By section 3, a party entitled to the money collected on execution, if the same be not paid on demand, may hold the officer responsible on motion or suit, upon ten days' notice, for the amount collected and fifteen per cent. per annum damages.

By section 4, the officer is .held responsible to the plaintiff in the execution for the amount of the execution and thirty per cent. damages thereon, for failing to return it for thirty days after the return day, without a legal excuse; but if the defendant is insolvent, then there is no liability for the principal of the execution; and this liability may be enforced by motion or suit, upon ten days' notice. But, by an amendment of August 28, 1862 (*Myers' Supplement*, 213), this thirty per cent. damages is repealed, and a penalty of from ten to one hundred dollars substituted; but the remedy remains without alteration.

By section 5, if the execution is stayed by injunction or other legal process, and the defendant has paid any money on it, which is still in the officer's hands, and he shall refuse to return it, he is liable to the defendant under the same rules as to the plaintiff by section 3.

Then it is provided, that " all *motions* allowed by this chapter must be commenced within two years after the cause of such motion accrued. It is said that "motion" in this clause should be construed as equivalent to *action*, and that either *suits* or *motions* should be barred after two years; but there are several classes of motions for different offenses, for some of which the single remedy of motion is given, whilst for others, the twofold remedy of motion or suit is allowed; and as the bar of two years only applies to the *remedy by motion*, and would be inconsistent with other provisions of the Revised Statutes *if applied to suits*, we think the language really

expresses the meaning of the Legislature, and we are not disposed to extend it further by construction.

There remains the question of *non est factum*, as presented by the answer, which is to be tested alone by its averments, as it was disposed of on demurrer. This question, so far as we are informed, has never been adjudicated by this court.

In *Seely vs. The People* (27 *Ills. Rep.*), upon a joint and several official bond of a master in chancery, for the faithful discharge of his official duties, the sureties plead *non est factum* upon the following facts: In the body of the bond, three securities are named, Heaton, Seely, and Morrow. When the bond was presented to the appellant Seely, Heaton's name appeared to the bond, and Seely, supposing it to have been executed by Heaton, signed his name as co-surety with Heaton. It turned out that it was a forgery as to Heaton. In delivering the opinion of the court, Chief Justice Caton said:

"Although we have not been referred to, nor have we met with, a case precisely in point, yet we think, upon principle, this should constitute a good defense to the action on the bond. By a fraud practiced upon the defendant, by means of the commission of a high crime, he was made to assume a different and greater liability than he intended or supposed he was assuming when he executed the bond."

The court goes on, then, with a very intelligent discrimination between such cases and those in which the securities sign on the assurance that other named persons will also sign. In the latter case, the security relies upon the assurance, instead of exercising the prudent precaution to see that the named persons do sign the bond; and, having trusted to this assurance, must suffer for his own want of precaution.

But this is not the case where it is the duty of a court or officer to take, approve, and test an official bond; in such cases, the name appearing to the bond, it being in the custody of the court or officer who is to take it, he may presume that the signature is genuine, and common prudence does not require that he should inquire into this; and, more especially, when, as in this case, it is averred that the court represented that the party had signed it.

As the signature must be genuine, or an enormous crime must have been perpetrated, it cannot be said that the securities, by their own credulity, contributed to their being bound, without D. A. Brewer also being legally bound with them.

Whether, therefore, the Illinois case should, in its full length and breadth, be regarded as a true expounding of the law, it not appearing therein that the officer who was to take and approve the bond either had the custody of it or made any representations to Seely, the defendant, we are satisfied that when the bond is in the custody of the court or officer that is to approve it, and signatures already appear to it, all those subsequently signing have the right to presume the signatures are genuine, and that the court and officer has discharged their duty according to law; and if it should turn out that the court or officer has not done so, and that, in fact, some of the preceding signatures are forgeries, the bond should not be regarded as obligatory upon the subsequent signors. In such case, those who suffer loss must look to the responsibility of the officers whose dereliction of duty has produced the disaster.

In *Rawlings vs. The United States* (4 *Cranch*, 219), the Supreme Court of the United States held, that where the names of the proposed sureties were in the body of the bond, and some of the sureties signed with the under_

standing that the bond was not to be binding and considered as executed until all signed it; that, until all have signed it, no responsibility attached to those whose signatures do appear to it. It is not necessary in this case to approve of even this high authority, yet it may be recited to show how infinitely stronger this case, as averred, is, to the one in the supreme court.

And other cases are cited in *volume* 2, *New Series*, 1862, 1863, *American Law Register*, 346–7, to show that such bonds, not being negotiable instruments, may be regarded as an escrow, to be delivered only on condition that all whose names are written in the bond should sign it.

But all that we intend now to decide is, that the answer in this case did present a good defense of *non est factum* by the sureties; and that the demurrer to their answer should have been overruled.

The judgment is reversed, with directions for a new trial, with leave to either party to amend their pleadings, and for further proceedings consistent to this opinion.