SUPERVISORS OF OMRO VS. KAIME and others.

TOWN TREASURER: BOND: SURETY. *(1) Failure to approve bond does not relieve treasurer or sureties. (2) Liability of surety in case of annual office. (3) Duty of town supervisors in appointing treasurer on vacancy. (4) When treasurer and sureties liable after expiration of original term. (5) Liability for loss through failure of bank.*

1. The omission of the chairman of town supervisors to formally approve the town treasurer's bond as required by law, does not relieve the treasurer or his sureties from their liability on the bond.

2. The liability of a surety cannot be indefinitely extended; and in case of an annual office, the surety is presumed to contract for the faithfulness of the officer only for the year for which he was chosen, and such further time as is reasonably sufficient for the election and qualification of his successor.

3. The statutory provision (Tay. Stats., 363, § 76), that if a town treasurer shall refuse to serve, or if his office shall become vacant, the town supervisors "shall forthwith appoint a treasurer," does not require the board to act on the very day when the time for the treasurer elect to qualify expires without his having done so; especially where he has up to that day manifested an intention to serve.

4. Under the laws of this state, a town treasurer holds his office for one year and until his successor is elected and qualified; and where such a treasurer, being elected his own successor, manifested an intention to hold for the second term, by taking the oath of office and filing his bond, but without sureties, and continued to act as such treasurer nearly two months after the time limited by law for qualifying for the second term, and neglected to pay over, to the successor then appointed, the moneys of the town in his hands: *Held,* that both he and his sureties were liable on his first bond, especially as the moneys for which he was in default came to his hands during his first term, and were during that term deposited in a bank, and were lost by the failure of such bank within one week after the expiration of the time given him to qualify for the second term.

5. Where a town treasurer deposits the town money in a bank without authority of law, and it is lost by failure of the bank, he and his sureties cannot defend on the ground that he was not guilty of want of care or diligence in making such deposit.

APPEAL from the Circuit Court for *Winnebago* County.

This was an action against *Kaime*, as town treasurer, and the sureties upon his official bond, to recover funds of the town which were lost through the failure of the bank wherein they were deposited by *Kaime*. *Kaime* was first elected town treasurer April 7, 1873, and on the 8th of April took the oath of office and filed the bond on which his codefendants in this action were sureties. This bond was never formally approved by the chairman of the board of supervisors, as required by the statute. *Kaime* entered upon the duties of his office, and received moneys of the town, which he deposited with the private banking firm of Howard & Co., upon their agreement to pay him interest on the deposits. The account of *Kaime* with the bank, as treasurer, was kept separate from his individual account. On the 7th of April, 1874, *Kaime* was reelected treasurer, and filed a bond without sureties, which was never approved. He was requested by the supervisors to procure sureties, which he failed to do, but continued in possession of the office until June 6, 1874, when the board of supervisors declared the office vacant because of *Kaime's* neglect to file a bond with proper sureties, and elected one Bushnell to fill the vacancy. The latter filed his bond, with sureties, approved by the chairman, and took possession of the office June 15, 1874. *Kaime* received no public moneys after his second election. On the 24th of April, 1874, the banking firm of Howard & Co. failed, and Howard absconded. None of the town funds deposited in the bank were recovered, and the action was brought to recover the deficiency. The referee before whom the cause was heard, held that all the defendants became liable on the first bond for such moneys as came into *Kaime's* hands as treasurer after his election in April, 1873, and until his office became vacant by his failure to qualify under his election in 1874; and that plaintiffs were entitled to judgment against all the defendants as prayed for in the complaint.

The court confirmed the report, and gave judgment accordingly, from which the defendants appealed.

*C. W. Felker*, for appellants:

1. The sureties were not liable beyond the term for which *Kaime* was elected in April, 1873. The obligation of a surety is a matter of strict law, and can never arise by implication. 24 Wis., 521; 9 Wheat., 680. A surety on the official bond of an officer whose term is limited to a year, is not liable beyond the year, though the officer continues by law until his successor is provided. *Dover v. Twombly*, 42 N. H., 59; *Chelmsford Co. v. Demarest*, 7 Gray, 1; *Hassell v. Long*, 2 M. & S., 363; *Mayor v. Horn*, 2 Harring. (Del.), 190; *County of Wapello v. Bingham*, 10 Iowa, 39; *Welch v. Seymour*, 28 Conn., 387; *Arlington v. Merrick*, 2 Saund., 404; *Kitson v. Julian*, 30 Eng. L. & E., 326; *Peppin v. Cooper*, 2 B. & Ald., 431. The statute provides that the town treasurer shall take the oath and file his bond within ten days after his election. Tay. Stats., 361, § 67, and 370, § 113. It was the duty of the supervisors, at the expiration of ten days after *Kaime's* second election, when they knew that he had not filed a proper bond, to at once declare the office vacant, and appoint a new treasurer. The statute provides that they shall *forthwith* appoint, etc. Tay. Stats., 363, § 76. *Forthwith* does not mean from April 18th to June 6th, nor even from April 18th to April 24th. The word has so often received judicial construction, that it cannot be extended, even to accommodate the negligence of town supervisors. *Kaime* was, therefore, undoubtedly treasurer until June 6, 1874, although he had failed to file a proper bond. Dillon on M. C., 193, § 153. And the defalcation having occurred after the year had expired for which the sureties were bound, and after the supervisors should, by law, have appointed another treasurer, it seems clear that the sureties were not bound. 2. The moneys having been converted by Howard,

without fault of the treasurer, the latter is not liable. It is true that there is a great preponderance of authority against this proposition. But the court will observe that in many of the cases great stress is laid upon the words that the officer will "safely keep" the money, etc. The condition of the bond in this case is, that he will "properly and legally disburse or pay all moneys that may come into his hands," etc. Does this condition bind him to more than reasonable diligence in case of the money of the town? See *Ross v. Hatch*, 5. Iowa, 159, and cases there cited; *Supervisors v. Dorr*, 26 Wend., 440, and cases there cited.

*H. B. Jackson*, for respondent:

1. The power to approve or disapprove the bond is only for the better security of the public, and the validity of the bond does not in any way depend upon the approval. 7 Mo., 81. 2. The loaning or depositing of the money with Howard during *Kaime's* first term, and the fact that it was thereby lost and never returned to him, constituted an unlawful conversion of the money during the first term. Defendants would therefore be liable on the bond for the first year, even though *Kaime* had duly qualified and entered upon the second term, and had not been holding over under his first election. No money came into his hands after the second election, and all had passed out of his hands by such loaning before that time, and the liability of the sureties follows from the rule laid down in *Vivian v. Otis*, 24 Wis., 518. But *Kaime*, not having qualified for the second term, never became his own successor, and continued to hold under the first election, as of the first term. Tay. Stats., p. 362, § 71; *State v. Washburn*, 17 Wis., 658. 3. Even when public money is taken by force and feloniously from the treasurer, without any fault on his part, this is no defense to an action on his bond. *Halbert v. State*, 22 Ind., 125; *Morbeck v. State*, 28 id., 86; *Muzzy v. Shattuck*, 1 Denio, 233; *U. S. v. Prescott*, 3 How., 578.

*Gabe Bouck*, on the same side:

1. The statute requiring the approval of the treasurer's bond by the chairman of the supervisors is merely directory, and is for the benefit of the town, and not for the treasurer or his sureties, nor can they take advantage of the omission. *People v. Johr*, 22 Mich., 461, and cases there cited; *People v. Smyth*, 28 Cal., 21; *Auditor v. Woodruff*, 2 Ark., 73; *Stephens v. Crawford*, 3 Ga., 499; *State v. McAlpin*, 4 Ired. Law, 140; *State v. Hampton*, 14 La. An., 725; *Stevens v. Treasurer*, 2 McCord (S. C.), 107; *Mendocino County v. Morris*, 32 Cal., 145; *Taylor v. Auditor*, id., 174; *U. S. v. Maurice*, 2 Brock., 96; *State v. Lynch*, 6 Blackf., 395; *State v. Bowman*, 10 Ohio, 445; *Warren v. Phillips*, 30 Barb., 646; *Skellinger v. Yendes*, 12 Wend., 306. If the bond is not good as a statutory bond, it is as a common law bond. *Goodrun v. Carroll*, 2 Humph., 400; *Lord v. Lancy*, 21 Me., 468; 1 Ga., 574; 3 id., 499; 9 id., 314. 2. The defense that there was no lack of care and diligence will not avail. A town treasurer is an insurer, liable for all losses, even if stolen from him; his liabilities are not limited to those of bailee. *United States v. Prescott*, 3 How., 587; *Same v. Morgan*, 1 id., 160; *Same v. Dashiel*, 4 Wall., 185; *Thompson v. Board of Trustees*, 30 Ill., 99; *Hancock v. Hazzard*, 12 Cush., 112; *Ohio v. Harper*, 6 Ohio St., 607; *Commonwealth v. Comley*, 3 Pa. St., 372. *Ross v. Hatch*, 5 Iowa, 144, turned on the peculiar condition of the bond in that case, and is inapplicable here. *Supervisors v. Dorr*, 25 Wend., 440, has been overruled. *Muzzy v. Shattuck*, 1 Denio, 233. See also the notes to 7 Hill, 584. 3. The mere delay in appointing a successor, or settling, will not release the sureties. *People v. Jenkins*, 17 Cal., 300. The sureties in this case are liable for the money received by *Kaime* during the first year, until he duly paid it out or over to his successor, as required by law and his bond. The courts go further, and hold that where the law provides that an officer shall hold until his successor is elected and qualified, his bond covers his acts so long as he holds. *Thompson v.*

*The State,* 37 Miss., 518; *Freedolders v. Wilson,* 16 N. J. Law (4 Harr.), 110

COLE, J.  The condition of the bond executed by the defendants is essentially the same as that prescribed in sec. 113, ch. 15, Tay. Stats., p. 370.  It was, that the town treasurer would " faithfully discharge the. duties " of his office, and " properly and legally disburse or pay all moneys " that might come into his hands.  The statute made it the duty of the chairman of the board to approve the bond given, and to indorse his approval thereon.  The chairman failed to formally approve the bond as the law required, but this omission of duty on his part cannot have the effect to release either the treasurer or his sureties from their liability on the obligation. The provision is obviously for the protection of the town, and was intended to secure it against the risk of an insufficient bond.

The first error relied on for a reversal of the judgment is the ruling of the court that the sureties were liable for the defalcation of the treasurer.  It is said by the learned counsel for the defendants, that the principle is well settled that the obligation of a surety is a matter of strict law, never arising by implication; and that this principle, when applied to the facts of this case, exonerates the sureties from liability.  There is no controversy as to the correctness of this rule of law, but only as to its application to the case at bar.  It appears that the defendant *Kaime* was elected town treasurer on the 7th of April, 1873, and on the 8th took the oath of office, and filed his bond, on which his codefendants were sureties.  In April, 1874, *Kaime* was reëlected, took the oath of office, and filed with the the town clerk a bond in due form, but without sureties.  This bond was not approved by the chairman of the board.  It is an admitted fact that *Kaime* gave no bond with sureties for his second term, although requested by the officers of the town so to do.  He continued to act, however, as

town treasurer, until one Bushnell was appointed treasurer, and entered upon the duties of the office June 15, 1874. During the year 1873, *Kaime* had deposited the money of the town, together with his own funds, with one Howard, doing business as a banker at Omro, and who failed and ran away about the 24th of April. In consequence of the failure of Howard, the money of the town was lost; and we have no doubt that under these circumstances the sureties are responsible for it.

Under the statute, *Kaime* held his office for one year and until his successor was elected and qualified. Sec. 71, ch. 15, *supra*. And, though elected as his own successor, he failed to qualify for the second term by giving a proper bond within the time prescribed by statute. Sec. 67. This amounted to a refusal to serve, and an abandonment of the office. Sec. 68. The sureties contracted for the faithful discharge of the duties of the office by *Kaime*, and that he would properly and legally disburse and pay over the money of the town which should come to his hands. He has been guilty of a breach of duty, and has certainly failed to pay over to his successor the moneys of the town. The evidence clearly shows that *Kaime* loaned these moneys to Howard, or deposited them in Howard's bank, during his first term, and that in fact he received no money of the town after his reëlection. Under these circumstances we see no valid reason for holding that the sureties are released from all liability to make good the default of the treasurer. It is said by defendant's counsel that a surety on the official bond of an officer whose term is limited to a year is not liable beyond the year, though the officer continues to hold until his successor is chosen and qualified. And a number of cases are cited in support of this position. It is not considered necessary to examine these authorities in detail, for we do not intend to lay down any rule really in conflict with them. The liability of a surety cannot be indefinitely extended. When the office is annual, it may well be

presumed that the surety contracts for the faithfulness of the officer " only for the year for which he was chosen, and for such further time as is reasonably sufficient for the election and qualification of his successor," as held in *Chelmsford Co. v. Demarest*, 7 Gray, 1. See also the case of *Dover v. Twombly*, 42 N. H., 59. Under our system of popular elections, great inconvenience would arise if the term of one officer were to terminate before another commenced; and the statutes are framed to avoid any interval or vacancy.   And as time must necessarily elapse after an election to enable the officer elect to express his acceptance and qualify, it must be presumed that the sureties contracted that the old officer would perform his duty until a reasonable period was allowed for doing these things. It is conceded that *Kaime* had until the 18th of April to file a proper bond for the second term.   It is said that it was the duty of the supervisors on that day, upon ascertaining that he had not filed his bond with sureties, to have declared the office vacant, and to have appointed his successor.   This they might have done, undoubtedly, under sec. 76.   But though this provision declares that when a treasurer refuses to serve, the board " shall forthwith appoint a treasurer," this language is to have a reasonable construction.   It is not to be interpreted as requiring the board to act on the very day the time to qualify expired; more especially when the treasurer elect had manifested an intention to serve, as *Kaime* had done.   For it was not until after the failure of the bank on the 24th of April, that he indicated his purpose not to file a bond with sureties.

The other point relied on for a reversal of the judgment is, that as the treasurer had been guilty of no want of care and diligence in depositing the money in bank, the defendants ought not to be held liable for its loss.   The counsel frankly admitted that there was a great preponderance of authority against this position; and the concession is in accordance with the fact.   Upon this question we cannot do better than quote

the language of Mr. Justice McLean in pronouncing the decision of the court in *The United States v. Prescott et al.*, 3 How., 578. He says: "Public policy requires that every depositary of the public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that 'he should keep safely' the moneys which come to his hands. Any relaxation of this condition would open a door to frauds, which might be practiced with impunity. A depositary would have nothing more to do than lay his plans and arrange his proofs, so as to establish his loss, without laches on his part. * * No such principle has been recognized or admitted as a legal defense." p. 588. And we have certainly no disposition to relax the rule of liability on the part of treasurers entrusted with public moneys, by recognizing such a principle as a legal defense to an action upon their official bonds.

*By the Court.* — The judgment of the circuit court is affirmed.