The City of Fond du Lac vs. Moore and others, imp.

*April 4 — September 11, 1883.*

OFFICIAL BOND. *(1, 2) Limitation of responsibility by recitals.*
FOND DU LAC CITY CHARTER. *(3) Treasurer to give bond. (5) Alderman cannot be surety.*
EVIDENCE. *(4) Erroneous admission when disregarded on appeal.*

1. Where the tenure of office of a city treasurer was one year and until his successor should be elected and qualified, a recital in his official bond that he " was, at the last annual election, duly elected to the office . . . *for the next ensuing year* " limits the responsibility of the sureties to his official conduct *during his current term,* but not during twelve calendar months only.
2. But such limitation cannot extend to the obligation imposed by the condition of the bond to pay over to his successor all moneys in his hands or for which he is accountable as treasurer at the expiration of his term, although demand for such payment be not made until after his term has expired. [Whether an unreasonable delay

The City of Fond du Lac vs. Moore and others, imp.

in making such demand, if prejudicial to the sureties, would operate to discharge them, is not determined.]

3. The charter of the city of Fond du Lac requires the treasurer, before entering upon his office, to give a bond, with sureties, for the faithful performance of his duties.

4. Where it was admitted at the close of the trial that, upon the proofs as they stood, there was no disputed question of fact to be submitted to the jury, and the court thereupon directed a verdict, the erroneous admission or rejection of immaterial evidence will be disregarded on appeal.

5. Under the charter of the city of Fond du Lac an alderman is prohibited from being surety in a bond to the city; and if he has executed such bond as surety, he is not liable thereon.

APPEAL from the Circuit Court for *Rock* County.

This action was brought upon the official bond of John C. Pierron, late treasurer of the plaintiff city. The defendants are the sureties in such bond. The summons was served upon one Thomas Mason, also one of the sureties, who died before the complaint was filed. The defendants *Moore*, *Hughes*, *Lallier*, *Bartlett*, and *Gaynor* answered, and are the appellants here. The remaining defendant, Baker, did not answer, and does not join in the appeal.

Pierron was elected city treasurer on the first Tuesday in April, 1879 (succeeding in that office one Town), and duly qualified and acted as such for the ensuing term. He was re-elected to the same office on the first Tuesday in April, 1880, and qualified by filing his official oath, and giving the bond in suit, which is a joint and several bond in the penal sum of $100,000. It is in the usual form, and was duly executed by Pierron as principal, and the defendants as sureties. The condition is as follows: "Whereas, the above-bounden J. C. Pierron was at the last annual election duly elected to the office of treasurer of said city of *Fond du Lac* for the next ensuing year: Now, therefore, the condition of the above obligation is such that if the said J. C. Pierron shall faithfully discharge the duties of the office of treasurer of said city of *Fond du Lac*, and shall faithfully and truly

account for and pay over, according to law, all moneys which shall come into his hands by virtue of his said office, then this obligation to be void, otherwise to remain in full force and virtue."

Pierron was re-elected city treasurer at the election in April, 1881, and filed his oath of office in due time, but failed to give any bond.  At a meeting of the common council of the city, held May 23, 1881, a communication from Pierron was read informing the council that "owing to the unfortunate failure of Robert A. Baker, in whose bank the money belonging to the city has been deposited for the last five years," he would be unable to place sufficient funds in the treasury for the necessary expenditures in the months of May and June.  Baker (who is one of the sureties in the bond and a defendant in this action) was a private banker. He failed and permanently closed his bank May 17, 1881. At the same meeting of May 23d, the common council passed a resolution notifying Pierron that unless he should file his official bond on or before the 26th of that month, the council would declare his office vacant and elect his successor.  This resolution was served on Pierron the following day.  On May 26th the council passed a resolution reciting the foregoing proceedings, the failure of Pierron to file his bond as required, and his avowed inability to fulfil his duties as city treasurer, and declaring the office vacant.  The council thereupon elected John Woodhull his successor.

May 31, 1881, the mayor informed the council that Woodhull declined to accept the office.  Thereupon that body elected Pierron, who, on June 13th, following, filed his official oath and an official bond.  The council met on the same day — June 13th — and Pierron's bond was read.  The question of his eligibility on account of his being in default to the city was raised and discussed, and the bond was laid upon the table until the next meeting of the council.  Pierron ceased to act as treasurer May 17th.  The common

council again met June 18, 1881, and adopted a resolution that Pierron "is not a competent person in the law to be confirmed in and to hold the said office of treasurer of Fond du Lac, or to fill the vacancy so as aforesaid existing in said office, and the same be and hereby is declared to be vacant, and that the council refuse to receive or approve the bond tendered by said Pierron." Thereupon one H. P. Brown was elected to such office. The resolution in a preamble recites the previous proceedings, and assigns as the reason for the action of the council that Pierron "has been unable to, and has failed and still does fail to, qualify himself to hold and to continue to hold said office of city treasurer, by settling, accounting for, or paying over the funds, or any part thereof, for which he was and is in default as such treasurer of the city of *Fond du Lac*, and thereby removing his disability to hold said office." Brown duly qualified June 22d, and the next day entered upon the duties of his office. At a meeting of the council held June 23d, a communication from Pierron was read, asking that a committee be appointed to adjust his balances and settle with him in full. This communication seems to have been informally referred to Mr. Brown. The latter had interviews with Pierron on June 23d, 24th, and 25th, relative to getting possession of the books, moneys, etc., belonging to the office. In the last interview Brown demanded of Pierron "all the books, papers, accounts, and everything which he held of every nature as city treasurer." Pierron refused to deliver them, and constantly refused to recognize Brown as city treasurer.

July 6th, Pierron wrote to the council under that date as follows: " Believing it to be for the best interests of the city, as well as for each and every individual, I hereby tender my resignation as city treasurer of the city of *Fond du Lac*." No action was taken by the council on this communication. Pierron had an accounting with Brown July 7th, and surrendered to Brown the books of the office, vouchers, and

such money as he then had on hand, and Brown receipted therefor. The books of the treasurer showed a deficit of $37,160.15 in the hands of Pierron, no part of which has been paid by him. July 13th, Brown made demand of Pierron in writing for such deficit. The latter replied that he had surrendered everything he had, and the amount of such deficit was lost in Baker's bank. When Pierron succeeded Town in the office of city treasurer, he receipted to Town, under date of May 7, 1879, for $34,197.88, of which sum $24,223.61 was receipted for as cash, and the balance consisted of several items denominated in the receipt "cash items." The receipt corresponds in amounts with the charges standing against Town on the official books of account in the office. These same books show the balance against Pierron at the close of his first term to be $42,427.84.

It may here be stated (although not in due order of time) that, by direction of the common council, two orders were drawn upon the bond fund in the hands of the treasurer, in favor of the mayor and finance committee, amounting in the aggregate to $12,843.75, for the purpose of investing the money in United States bonds. These orders bear date May 17, 1881, and on that day were presented for payment by the drawees at the city treasurer's office, but were not paid. There then was, or should have been, sufficient money in the hands of the treasurer belonging to that fund to pay these orders.

A statement of the pleadings is unnecessary. It is sufficient to say that they present all of the questions considered in the opinion and determined by the court. Whatever further statement of the case is necessary will be found in the opinion.

The place of trial of the cause was changed from Fond du Lac to Rock county, and the same was tried in the latter county before the late Judge Conger, who, at the close of the trial, directed the jury to return a verdict for the plaint-

iff for the above deficit and interest, amounting in all to $39,547.15. The accuracy of the computation is not questioned. A verdict was rendered accordingly. A motion for a new trial was denied, and judgment for the plaintiff pursuant to the verdict was thereupon entered.

For the appellants there were briefs by *Geo. E. Sutherland*, as attorney, and *Finches, Lynde & Miller*, of counsel, and the cause was argued orally by *Mr. H. M. Finch* and *Mr. Sutherland*. To the point that the recitals in the bond limited the responsibility of the sureties, and that they were not liable for any default after the year, they cited: *National Banking Asso. v. Conkling*, 90 N. Y., 116; *Arlington v. Merricke*, 2 Saunders, 411; *Bell v. Bruen*, 1 How., 169; *Sanger v. Baumberger*, 51 Wis., 592; *Kitson v. Julian*, 30 Eng. L. & Eq., 326; *Overacre v. Garrett*, 5 Lans., 157; *Montgomery v. Hughes*, 65 Ala., 202; *Scott Co. v. Ring*, 29 Minn., 398; *Chelmsford v. Demarest*, 7 Gray, 1; *Dover v. Twombly*, 42 N. H., 59; *Rahway v. Crowell*, 40 N. J. Law, 207; *Welch v. Seymour*, 28 Conn., 387.

For the appellant *Hughes* there was a separate brief by *C. D. Cleveland*.

*Edward S. Bragg*, for the respondent.

The following opinion was filed May 31, 1883:

LYON, J. 1. At the outset we are called upon to construe the bond in suit and determine its scope and effect. The learned counsel for the appellants, in their arguments, contended with much earnestness that the recital in the bond, " Whereas, the above-bounden J. C. Pierron was, at the last annual election, duly elected to the office of treasurer of said city of *Fond du Lac for the next ensuing year*," limits the liability of the sureties, and that such liability terminated at the expiration of " the next ensuing year," to wit, on the first Tuesday in April, 1881, or at the furthest on the 22d of April, that being the day on which it is claimed Pierron

must be deemed to have vacated his office for failure to file his bond, if the charter of the plaintiff city required him to file any bond.

There can be no doubt that the recitals in a bond operate to limit and control the conditions, although such conditions be expressed in general terms. *Sanger v. Baumberger*, 51 Wis., 592, and cases cited by Mr. Justice Orton in the opinion. The time mentioned in the recital, to wit, "the next ensuing year," must have a reasonable construction. The recital is that Pierron was elected at the *last annual election*, and that shows he was elected for a full term. The tenure of his office was one year, and until his successor should be elected and qualified. City Charter, Laws of 1879, ch. 240, sec. 13, p. 387. Manifestly, by using the words "the next ensuing year" in the bond, the sureties intended to bind themselves for Pierron's official conduct during his current term. That might be more than one year, or it might be less. It seems to be an unreasonable construction to say that they intended just twelve calendar months — no more and no less. We discover no essential difference between the recital in this bond and that in the town treasurer's bond, which this court construed in *Supervisors of Omro v. Kaime*, 39 Wis., 468. There the recital was that Kaime, the defaulting treasurer, had been "duly elected town treasurer in and for the said town of Omro." Under this recital it was held that Kaime held his office for one year, and until his successor was elected and qualified, and that the sureties in his official bond were liable for all moneys of the town in his hands at the expiration of his term, received by him during his term and not paid over to his successor. Such successor was not appointed and did not enter upon his duties until June 25th following the first Tuesday in April, when Kaime was elected his own successor.

Limiting the condition of the bond in suit by the recital, it results that the appellants are only liable for moneys re-

ceived by Pierron during his official term, which commenced in 1880. But the limitation does not and cannot extend to the obligation imposed by the condition of the bond to pay over to his successor all moneys in his hands or for which he is accountable as treasurer at the expiration of his term, for such successor cannot lawfully demand or receive it until the term of the other has expired. The application of the rule contended for to the condition last mentioned would make it necessary for the proper town or municipal authorities to draw upon the treasurer, before his term expired, for all public moneys in his hands, and duly demand the same, or lose the security of his official bond. Certainly no such result was intended by the legislature in prescribing the form of such bonds, and it would be unreasonable to impute any such intention to the parties to the bond in suit. Besides, the case of *Supervisors of Omro v. Kaime, supra,* is express authority against the construction contended for. This branch of the case has been first considered because the question of the construction of the bond was raised by an objection on behalf of the appellants, made at the commencement of the trial, to the admission of any testimony under the complaint, on the alleged ground that it failed to state a cause of action. It is claimed that the facts alleged therein show that the term of Pierron expired as early as April 22d, at the latest, and the only demand of Pierron alleged was on July 18th following. The point of the objection is that no demand is alleged to have been made during "the next ensuing year" specified in the recital, and hence no cause of action existed against the sureties. If our construction of the bond is correct, the court properly overruled the objection.

If the town or municipal authorities delay for an unreasonable time to require the outgoing officer to close his accounts, and pay over the balance in his hands to his successor, especially if it is shown that the sureties have been preju-

diced by the delay, it may be that the sureties are thereby discharged. We do not so decide. It is sufficient, in this case, to say we think, from the undisputed facts and circumstances proved on the trial, that there was no unreasonable delay in that behalf.

2. The next question is, When did the term of Pierron, which commenced in 1880, expire? It was argued on behalf of the defendants that the charter of the plaintiff city does not require the city treasurer to give an official bond, and that when Pierron filed his oath of office, April 16, 1881, he became the qualified treasurer for the next ensuing year; and, further, that he was never lawfully removed from the office, and hence that Brown was not legally appointed thereto, and could not make an effectual demand of the moneys for which Pierron was accountable to the city.

The proposition that the law fails to require the treasurer of a city, who is intrusted with very large amounts of public moneys, to give a bond with sureties for the faithful performance of his duties, is somewhat startling; and we have carefully examined the statutes bearing upon it to ascertain whether the treasurer of *Fond du Lac* really enjoys an immunity from that obligation, which no town, county, or state, or other city treasurer (so far as we are advised), ever enjoyed in this state. We have reached the conclusion that he has no such immunity. Sec. 5, ch. 3, of the city charter of 1868 (ch. 59, P. & L. Laws of 1868, p. 82), required the city treasurer, before entering upon his office, to give a bond in such sum and with such conditions as should be prescribed by the common council. That section seems to have been omitted from the present revised charter (ch. 240, Laws of 1879), but ch. 240 of 1879 does not absolutely repeal ch. 59 of 1868. It only repeals so much of it as contravenes the provisions of ch. 240. But the provisions of ch. 59, which requires the treasurer to give bond, is not contravened by anything in ch. 240. Hence it is not repealed, but

The City of Fond du Lac vs. Moore and others, imp.

remains in full force, notwithstanding the revision of the charter.

We conclude, therefore, that Pierron never qualified as city treasurer under his election in 1881, or under his appointment made May 31st, for want of a proper official bond. If he held over under his election in 1880, he ceased to be treasurer when he tendered his resignation July 6th, and surrendered the office to Brown, July 7, 1881. From that time Brown was, at least, treasurer *de facto*, and was perfectly competent to demand of Pierron the moneys of the city in his hands, or for which he was chargeable.

3. The next question to be considered is, Was the amount of Pierron's defalcation for which these defendants, his sureties in his bond of 1881, are liable proved by proper testimony? That it was proved by the testimony which the court admitted was conceded at the close of the trial by counsel for defendants, who frankly stated to the court that as the proofs stood they did not consider there was any disputed question of fact to be submitted to the jury. Thereupon the court directed a verdict for the plaintiff for the amount recovered. Such being the situation of the case, it is obvious that if no testimony was improperly admitted, the effect of which was to increase the amount of the recovery, or if none was rejected which had it been received might have tended to reduce the amount recovered, the court was right in directing the verdict. The case was in the same position as though it had been tried by the court without a jury, and hence the admission or rejection of immaterial testimony should be disregarded. A great deal of testimony was admitted to show that Baker was utterly insolvent when his bank closed; also proceedings in insolvency by Pierron, instituted after his defalcation, in which he admitted the amount of his defalcation to the city. It seems to us that all of this testimony as to Baker's insolvency was entirely immaterial. The question was how much of the

money of the city had Pierron failed to pay over, for which his sureties in the bond of 1881 were responsible, and we fail to see how the solvency or insolvency of Baker affected that question. The admissions of Pierron in his insolvency proceedings were clearly incompetent, as against his sureties, to establish the amount of his defalcation. They were made after default and after he had retired from the office of city treasurer. But the amount of his defalcation was proved by the treasurer's books, the comptroller's books, and the adjustment of Pierron's accounts with his successor, Brown. All this was competent evidence, and fully established the amount of his defalcation to the city, without any regard to the immaterial or incompetent testimony which was received. The admission of such testimony was, therefore, quite harmless, and cannot affect the judgment. It is further claimed that testimony was rejected which, had it been received, might have reduced the amount recovered.

The principal testimony so offered and rejected consisted of a statement made from the books of Baker's bank showing balances to the credit of Pierron each month during his terms as treasurer, and it was claimed that such balances, when compared with the treasurer's books already in evidence, would demonstrate that Pierron had much less money of the city in his hands than his account shows. From the best idea we can get of the case, after a most perplexing examination of the confused and unsatisfactory record presented to us, we think the offered evidence would have failed utterly to prove what is claimed. There was no offer to show any account which Pierron kept with the bank, and it does not appear that all of the transactions of the treasurer passed through Baker's bank. There may be, almost necessarily must be, discrepancies in the two accounts, considering the manner in which they were kept, and yet both may be entirely accurate. We think it was not error to reject the statement. We cannot pursue this branch of the case. We find no re-

jected offer of testimony which brings this case within that of *Vivian v. Otis*, 24 Wis., 518. That is to say, we find no ruling of the circuit court excluding testimony tending, or which might tend, to show that any portion of the money for which the plaintiff city recovered judgment was converted by Pierron before the execution of the bond in suit. Whether, when the bond in suit was executed, Pierron actually had or had not under his control the money or vouchers, or other choses in action, or all of these, to an amount equal to that with which he stood chargeable to the city on his official books, it surely does not appear that he had theretofore converted any of the city funds. But it does appear that he paid out for the city, presumably on proper city orders, during his second term an amount largely in excess of that so charged against him at the commencement of such term. This would seem to demonstrate that the whole deficiency is covered by the bond in suit.

Our conclusion is that no material errors in the rulings on offers of or objections to testimony are disclosed in the record, and, under the concession of counsel that, as the evidence stood, there was no disputed question of fact for the jury, we think the court properly directed a verdict for the plaintiff. The view we have taken of the case renders it unnecessary to determine whether Pierron was in default for nonpayment of the orders of May 17, 1881, drawn against the bond fund in his hands.

4. The appellant *Hughes* submits a defense applicable only to himself. He was elected an alderman of the city at the annual election of 1880, and duly qualified as such before he executed the bond in suit. The city charter of 1868, ch. 3, sec. 7 (P. & L. Laws of 1868, ch. 59, p. 82), prohibits an alderman, or any other city officer, from being surety in a bond to the city. *Hughes* claims that this provision is still in force, and discharges him from liability on this bond.

When the charter of 1868 was enacted, each alderman was

a member of the common council.   By sec. 2, ch. 160, Laws of 1877, it is provided in substance that an alderman shall not become a member of the council until one year after his election.   In the charter of 1879 we find the following section:

"Sec. 24.   No member of the common council, while holding such office, shall be appointed to or be competent to hold any office of which the compensation is paid by the city; nor shall he or any other officer of the city, appointed or elected, be interested, directly or indirectly, in any contract as principal or as partner with a principal, or as surety or otherwise, the expense or consideration whereof, or any part of the same, is to be paid by the city."   Laws of 1879, ch. 240, p. 389.

It is claimed on behalf of the city that sec. 24 of ch. 240 is a revision of the subject matter of sec. 7, ch. 59, and necessarily modifies it so that the prohibition of sec. 7 is now limited to members of the common council, and hence does not include *Mr. Hughes*.   We think otherwise.   Sec. 24 disqualifies members of the council to hold certain offices, and the balance of the section prohibits any city officer from being interested in any manner in contracts under which the city may be charged.   It does not cover the ground of sec. 7, ch. 59, Laws of 1868, or contravene that section.   Neither does any other provision of the charter of 1879 to which our attention has been directed.   Hence, under the rule herein adopted as to the obligation of the city treasurer to give a bond, it must be held that sec. 7 is still in force.   Under the decisions of this court, cited by counsel, it must necessarily be held that the appellant *Hughes* is not liable on the bond in suit.   The cases referred to are *Cothren v. Connaughton*, 24 Wis., 134; *Branger v. Buttrick*, 30 Wis., 153; *Gilbank v. Stephenson*, id., 155.   They rule this case.

*By the Court.*— As to the appellant *Hughes*, the judgment of the circuit court is reversed, and the cause remanded with

The City of Fond du Lac vs. Moore and others, imp.

directions to dismiss the complaint as to him. As to the other appellants the judgment is affirmed.

Upon a motion for a rehearing counsel for the appellants urged that as *Hughes* was prohibited from becoming surety upon the bond, and the other defendants signed under the belief that his signature was valid and binding, the bond is invalid as to them, citing: *Pepper v. State*, 22 Ind., 399; *Ayres v. Milroy*, 53 Mo., 521; *Daniels v. Gower*, 54 Iowa, 321; *Seely v. People*, 27 Ill., 173; *Chamberlin v. Brewer*, 3 Bush, 569; *Howe v. Peabody*, 2 Gray, 556; *Hall v. Parker*, 37 Mich., 590; *Green v. Kindy*, 43 id., 282; *Dair v. U. S.*, 16 Wall., 1; *Butler v. U. S.*, 21 id., 273; *Chicago v. Gage*, 95 Ill., 618; *Allen v. Marnay*, 65 Ind., 399.

Counsel for the respondent, *contra*, argued that as the defendants had failed to allege in their answer that they signed the bond relying upon *Hughes*, or that they had no knowledge of his incompetency, that defense cannot now be urged. *Crandall v. Bank*, 61 Ind., 349. Even if it had been made in time, such defense is not good. *Deardorff v. Foresman*, 24 Ind., 481; *Blackwell v. State*, 26 id., 204; *Webb v. Baird*, 27 id., 368; *State ex rel. v. Pepper*, 31 id., 76; *Stoner v. Millikin*, 85 Ill., 218; *Smith v. Peoria Co.*, 59 id., 412; *Helms v. Wayne Agricultural Co.*, 73 Ind., 331; *Veazie v. Willis*, 6 Gray, 90; *York Co. M. F. Ins. Co. v. Brooks*, 51 Me., 506; *State v. Peck*, 53 id., 284; *Selser v. Brock*, 3 Ohio St., 302.

The motion was denied September 11, 1883.