H. E. VAN TREES *et al.* v. THE TERRITORY OF OKLAHOMA.

(Filed July 30, 1898.)

1. COUNTY TREASURER—*Liability on Official Bond.* In an action on an official bond of a county treasurer, the fact that the moneys were deposited in a solvent banking institution, which thereafter fa led, resulting in the loss of the funds, without any fault or negligence on the part of the treasurer, constitutes no defense to said action.

2. ACCOUNT—*Defendant Witness—Reference.* Under section 304 of our Civil Code, where an issue of fact is joined upon an account pleaded on one side only, and it shall be made to appear to the court that it is necessary that the party on the other side should be examined as a witness to prove the account, the court has the power to make a reference, without the consent of the defendants; and the defendants are not entitled, as a matter of right, to a trial by jury.

(Syllabus by the Court.)
—23

*Error from the District Court of Custer County; before John C. Tarsney, District Judge.*

*R. B. Forrest,* for plaintiff in error.

*H. S. Cunningham, Attorney General,* for defendant in error.

### STATEMENT OF FACTS.

This was an action brought by the Territory of Oklahoma, for the use and benefit of Custer county, in said Territory, against H. E. Van Trees, principal, and others as sureties, upon an official bond. Judgment for plaintiff. Defendants bring error. Affirmed.

The material allegations in the petition are as follows: "That the defendant H. E. Van Trees was the duly elected, qualified, and acting county treasurer of said county during the period herein named; that by virtue of his said office, and while acting as county treasurer of said county, the defendant H. E. Van Trees, collected and received as such officer the sum of $6,914.93, all of which was the money and property of said county and Territory, and was received from the payment of taxes for the years 1892, 1893, and 1894, and while the defendant was the county treasurer as aforesaid, and while acting as such official, he disbursed of said moneys collected as aforesaid the sum of $4,693.99, and no more; that the said H. E. Van Trees has not at any time disbursed or accounted for, or paid over to his successors in office, the remaining sum of money so received by him, to-wit:, the sum of $1,112.58. The plaintiff shows that the reason the said $1,112.58 cannot be distributed to the following funds to which it belongs, and the amount credited to each which

is due it, to-wit, territorial fund and county fund, as follows: Salary fund, court fund, poor fund, insane fund, road and bridge fund, and supply fund, contingent fund, county sinking fund, county school fund, separate school fund, township fund, district school sinking fund, school township fund—is that on the 9th day of December, 1896, the county court-house building, together with all the books, papers, records of the said county of Custer, formerly G county, were destroyed by fire, including all the records, books, papers, and accounts of every description belonging to the county treasurer's office; and the plaintiff states that he is unable to give any more accruate and better description of the $1,112.58, or the fund to which it belongs, than herein given, for the reason hereinbefore given. The plaintiff states that there is now due from him, the said H. E. Van Trees, of the moneys so received, and not disbursed or not accounted for, or not paid or delivered to his successor in office or any other proper person, the sum $1,112.58; that due demand has been made for the payment of the said sum of money of each of the defendants."

The official bond sued on was made a part of the petition, and is as follows:

"Official Bond. Know all men by these presents, that we, H. E. Van Trees, as principal, and Gille Watts, J. W. Lawton, W. J. Mathews, B. C. Gallion, F. N. Salyer, J. A. Vance, Wm. Coffee, G. E. Morris, C. H. Smith, W. F. Cabaniss, and P. M. Heard, as securities, are held and firmly bond unto the county of G, and Territory of Oklahoma, in the penal sum of twenty-five thousand dollars, for the payment of which we bind ourselves, our heirs, executors, and administrators. The condition of the above obligation is that whereas, the above-bound, H. E. Van Trees, has been elected to the office of county

treasurer in and for G county, Territory of Oklahoma: Now, if the said H. E. Van Trees shall render a true account of his office and of the doings therein to the proper authority, when required thereby or by law, and shall promptly pay over to the officer or officers entitled thereto all money which may come into his hands by virtue of his said office, and shall faithfully account for all the balances of the money remaining in his hands at the termination of office, and shall hereafter exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, and sureties or other property appertaining to his said office, and deliver them to his successor, or to any person authorized to receive the same, and if he shall faithfully and impartially, without fear, favor, fraud, or oppression, discharge all other duties now or hereafter required of his office by law, then this bond to be void; otherwise in full force."

The defendants demurred to the petition on the ground that the same does not state facts sufficient to constitute a cause of action, which demurrer was overruled by the court, to which the defendants excepted, and assign as one of the errors in this court. Thereupon the defendants filed their answer to the petition. The answer is in three paragraphs, as follows:

"First. The defendants admit the election, qualification, and the holding of office of county treasurer of the late G, now Custer, county, but defendants deny the receipt of the sum of $6,914.93, as such officer, or any other sum greater than $5,801.35; and defendants aver that said H. E. Van Trees has paid out and disbursed and fully accounted for the sum of $5,801.35 to the proper persons and authorities to whom, and for whose use and benefit, he had collected the same as such county treasurer, and deny specifically that the said defendant Van Trees is indebted to said Custer county in any sum of money whatever as such county treasurer.

"Second. And defendants deny each and every allegation material to said cause not heretofore expressly admitted.

"Third. For a third and other defense to said alleged cause of action the defendants allege that in the spring and summer of 1894, while the defendant Van Trees was acting as such county treasurer of said G county, his office was located in the town of Arapahoe, in said county, the then county seat of said county; that said town was at said time without a bank or depository for the safe deposit and keeping of funds belonging to said county and other municipalities for whom said county treasurer was required by law to collect taxes and public moneys; that the board of county commissioners of said county made no provison, though often requested so to do by said county treasurer, for the safe deposit or keeping of said money safe from loss by fire, robbery, or other manner, but directed said county treasurer to deposit said funds in such bank as he desired for safe-keeping; that under the advice and by the consent of such board of county commissioners the said H. E. Van Trees, as such county treasurer, did deposit all public moneys coming into his hands as such officer in the Farmers' & Mechanics' Bank in the town of Watonga, in the county of Blaine, which said bank was a duly organized corporation, and carrying on a regular banking establishment, and the said county treasurer had reason to believe and did believe that such bank was a solvent and wholly reliable establishment, and under such belief he deposited such funds in said bank as county treasurer, and not otherwise; that said bank was selected as a depository for said funds as the nearest and most convenient place or bank for depositing said funds with safety; that while some of the funds of several of the municipalities in the hands of said county treasurer collected as such officer were in said bank, deposited by him as such county treasurer, the said bank failed and became insolvent, and thereafter neither said bank nor the receiver appointed

by the court to take charge of its insolvent estate was ever able to, and never did, repay or turn over to the said county treasurer any part or portion of said money so deposited with said bank by said treasurer. And defendants aver that, notwithstanding the loss of such money by the failure of the bank, the said H. E. Van Trees has long since paid over to the county of Custer all the money in his hands as such treasurer due the county of Custer, and has not withheld or failed to pay any such money whatsoever coming into his hands as such county treasurer."

The plaintiff moved the court to strike out all that portion of the third paragraph of defendants' answer except the following:

"And defendants answer that, notwithstanding the loss of such money by the failure of the bank, the said H. E. Van Trees has long since paid over to the county of Custer all the moneys in his hands as such treasurer of the county of Custer, and has not withheld or failed to pay any such money whatsoever coming into his hands as such county treasurer."

This motion was sustained by the court, to which ruling the defendants excepted and assign as error in this court. The plaintiff then filed a reply to defendants' answer, denying each and every material allegation therein contained. It then appearing to the court that the trial of the cause would require an examination of accounts, and that it would be necessary for the parties defendant to prove such account, the court ordered a reference of said cause, to which order of reference the defendants excepted, and demanded a trial by jury. The objection was overruled by the court, to which the defendants excepted, and assign as error in this court. The referee made the following finding of facts:

"Now, therefore, I find that defendant, H. E. Van Trees, was elected county treasurer of G, now Custer, county, as alleged in plaintiff's petition; that he executed the bond sued upon as such county treasurer, with the co-defendants herein as sureties, conditioned as required by law, and that as such county treasurer of G county, now Custer county, there came into his hands, which he has not paid out, accounted for, or paid over to his successor, and is now due and in default as such treasurer, the sum of $1,100; and that at the commencement of this action the defendants herein named owed the sum of $1,100 to the various funds and subdivisions of the county, as such county treasurer."

To all which findings and report the defendants at the time excepted. Thereupon the court approved the report of the referee, and rendered a judgment thereon against H. E. Van Trees and the other defendants for the sum of $1,467 and costs of this action; to which judgment and ruling of the court the defendants excepted at the time. Motion for a new trial was filed by the defendants and overruled by the court, and excepted to by the defendants. And thereupon the defendants appealed from said judgment, and bring the cause to this court on the certified transcript of the record and proceedings in the court below.

Opinion of the court by

HAINER, J.: The principal question to be decided in this case is whether a county treasurer, under our statute relating to that officer, and the bond executed by him and his sureties, is liable for public funds in his possession which have been lost by reason of the failure of a bank in which he had deposited a portion of the funds for safe-keeping, without any fault or negligence on the part of such treasurer. This proposition is raised by the

facts pleaded in that portion of paragraph 3 of the answer of the defendants to which the court sustained a motion to strike out, as not being a proper defense to this action.    The liability of a public officer and the sureties on his bond for loss of public funds by such officer without any intentional wrong upon his part, or without any fault or negligence, is a grave question, and of far-reaching consequences.    The decisions of the state courts are not entirely harmonious upon this question. The supreme court of the United States has uniformly held to the doctrine of strict liability.    There are two general rules which have been adopted by the courts in construing bonds of public officials:

1.    The first rule is based upon the strict letter of the bond, and upon consideration of public policy.    Under this rule there are no exemptions, unless it is so stated in express terms in the bond.    In other words, public officers who are intrusted with public funds, and required to give a bond for the faithful discharge of their official duties, are not mere bailees of money, to be exonerated by the exercise of ordinary care and diligence. Their liability is fixed by the bond, and the fact that the money is lost or stolen without any fault or negligence upon their part does not release them from liability on their official bonds.

2.    The second rule is that the officer stands in the relation of a bailee for hire, and he is only bound to exercise good faith and reasonable skill and diligence in the discharge of the trust imposed upon him.    In other words, he is simply to exercise the prudence, caution, and attention which careful men usually exercise in the management of their more important affairs of business, and he is not responsible for any loss occurring without

any fault or negligence on his part. The statute may impose or the officer may assume a higher responsibility, but under this rule of construction a greater responsibility does not result from the fact that he has entered into an undertaking to faithfully discharge the duties of his office.

On account of the important principles involved in this case, we have reviewed a number of the leading cases upon the subject. The first and leading case, decided by the supreme court of the United States in 1844, is the case of *U. S. v. Prescott*, 3 How. 578. This was an action brought in the circuit court for the district of Illinois on a bond given by Prescott, with the other defendants as his sureties, for his faithful performance of the duties of receiver of public moneys at Chicago, in the state of Illinois. The defense pleaded was that the sum not paid over by the defendant Prescott, and for which the action was brought, had been feloniously stolen, taken, and carried away from his possession by some person or persons unknown to him, and without any fault or negligence on his part. Mr. Justice McLean, in delivering the opinion of the court in that celebrated case, said:

"This is not a case of bailment, and consequently the law of bailment does not apply to it. The liability of the defendant Prescott arises out of his official bond, and principles which are founded upon public policy. The conditions of the bond are that the said Prescott has 'truly and faithfully executed and discharged, and shall truly and faithfully continue to execute and discharge, all the duties of said office, [of receiver of public moneys at Chicago,] according to the laws of the United States, and, moreover, has well, truly, and faithfully, and shall well, truly, and faithfully keep, safely, without loaning or using, all the public moneys collect-

ed by him, or otherwise at any time placed in his pos-
session and custody, till the same had been or should be
ordered by the proper department or officer of the gov-
ernment to be transferred or paid out, and, when such or-
ders for transfer or payment had been or should be re-
ceived, had faithfully and promptly made, and would
faithfully and promptly make, the same as directed,' etc.
The condition of the bond has been broken, as the de-
fendant Prescott failed to pay over the money received
by him when required so to do; and the question is
whether he shall be exonerated from the condition of his
bond, on the ground that money had been stolen from
him. The objection to this defense is that it is not
within the condition of the bond, and this would seem
to be conclusive. The contract was entered into on his
part, and there is no allegation of failure on the part of
the government. How, then, can Prescott be discharged
from his bond? He knew the extent of his obligation
when he entered into it, and he has realized the fruits
of this obligation by the enjoyment of the office. Shall
he be discharged from liability, contrary to his own ex-
press undertaking? There is no principle on which such
a defense can be sustained. The obligation to keep
safely the public money is absolute, without any condi-
tion, express or implied; and nothing but the payment
of it, when required, can discharge the bond.  *   *
Public policy requires that every depositary of the public
money should be held to a strict accountability,—not
only that he should exercise the highest degree of vigi-
lance, but that 'he should keep safely' the moneys which
come to his hands. Any relaxation of this condition
would open a door to frauds which might be practiced
with impunity. A depositary would have nothing more
to do than to lay his plans and arrange his proofs so
as to establish his loss without laches on his part. Let
such a principle be applied to our postmasters, collectors
of the customs, receivers of public moneys, and others
who receive more or less of the public funds, and what

losses might not be anticipated by the public? No such principle has been recognized or admitted as a legal defense. And it is believed the instances are few, if, indeed, any can be found, where any relief has been given in such cases by the interposition of congress. As every depositary receives the office with a full knowledge of its responsibilities, he cannot, in case of loss, complain of hardship. He must stand by his bond, and meet the hazards which he voluntarily incurs."

In the case of *U. S. v. Morgan*, 11 How. 154, the same question is decided on precisely the same grounds.

In the case of *U. S. v. Dashiel*, 4 Wall. 182, the same question was before the court, and the case was decided upon the doctrine laid down in the case of *U. S. v. Prescott* and the case of *U. S. v. Morgan*. In this case the learned judge said "that the fact pleaded, that the money was stolen without fault or negligence, constitutes no defense to the action, was frivolous, and would have been stricken from the record, as such, on a proper motion in the court below."

The case of *U. S. v. Keehler*, 9 Wall. 83, asserts the same doctrine, and applies it to an action on a postmaster's bond, who had an order directing him to pay said money out. Mr. Justice Miller, in delivering the opinion of the court in this case, said:

"But this court has decided more than once that, in an action on the official bonds of such officers, the right of the government does not rest on the implied contract of bailment, but on the express contract found in the bond, to pay over the funds. * * Such was the law as declared by this court long before the rebellion broke out, and, however hard it may be in some of its aspects, the court has no option but to act on it."

In the case of *U. S. v. Thomas*, 15 Wall. 337, the question was presented whether the forcible seizure by the

rebel authorities of public moneys in the hands of loyal government agents, against their will and without fault or negligence, was a sufficient discharge from their official bonds. "This precise question," said Mr. Justice Bradley, "has not as yet been decided by this court." The learned court distinguishes this case from the case of *U. S. v. Prescott*, and the cases following it, and makes this exception: "No rule of public policy requires an officer to account for moneys which have been destroyed by an overruling necessity, or taken from him by a public enemy without any fault or neglect on his part."

While there is some conflict in the decisions of the state courts, the great weight of authorities supports the doctrine laid down by the supreme court of the United States with respect to the liability of public officers and their sureties upon official bonds. These courts hold that where the statute in strict terms imposes a duty to pay over public moneys received and held as such, and no condition limiting the obligation is found in the statute, the obligation thus imposed upon and assumed by the officer and his sureties will be deemed to be absolute, and the plea that the money has been lost or stolen without any fault or negligence on his part does not constitute a valid defense to such an action. This rule has been adopted in the following states: Colorado, Nebraska, Nevada, Minnesota, New Jersey, Kansas, Missouri, Massachusetts, Illinois, Arkansas, Ohio, Pennsylvania, Indiana, Iowa, New York, Washington, Texas, Mississippi, New Mexico, Wisconsin, and North Carolina. These twenty-one states have followed the doctrine laid down by the supreme court of the United States in the following cases: *Gartley v. People*, (Colo. Sup.) 49 Pac. 272; *Bush v. Johnson Co.*, 48 Neb. 3, 66 N. W. 1023; *State*

*v. Nevin,* 19 Nev. 162, 7 Pac. 650; *Board v. Jewell,* 44 Minn. 427, 46 N. W. 914; *Inhabitants of New Province Tp. v. Mc-Eachron,* 33 N. J. Law, 339; *Rose v. Douglass Tp.,* 52 Kan. 452, 34 Pac. 1046; *State v. Moore,* 74 Mo. 413; *Inhabitants of Hancock v. Hazzard,* 12 Cush. 112; *Thompson v. Board,* 30 Ill. 99; *State v. Croft,* 24 Ark. 550; *State v. Harper,* 6 Ohio St. 607; *Com. v. Comly,* 3 Pa. St. 372; *Halbert v. State,* 22 Ind. 125; *Tillinghast v. Merrill,* 151 N. Y. 135, 45 N. E. 375; *Fairchild v. Hedges,* (Wash.) 44 Pac. 125; *Wilson v. Wichita Co.,* 67 Tex 647, 4 S. W. 67; *Griffin v. Board,* (Miss.) 15 South. 107; *U. S. v. Watts,* 1 N. M. 562; *Supervisors v. Kaime,* 39 Wis. 468; *State v. Clarke,* 73 N. C. 255; *State v. Blair,* 76 N. C. 78.

Applying the principles enunciated in these decisions to the case under consideration, the rule of strict construction must apply to county treasurers under the various provisions of our statute. The following provisions of our statute are applicable to this case:

Section 1660 of the Statutes of 1893, among other things, provides the form of the bond required to be given by the county treasurer. It is as follows:

"Whereas, the above bounden ——, was elected to the office of county treasurer of the county of ——, on the —— day of ——; now therefore, the condition of this obligation is such that if the said ——, or his deputy or deputies, and all persons employed in his office, shall faithfully and promptly perform the duties of his office, and if the said —— and his deputies shall pay according to law all moneys which shall come to his hand as treasurer, and will render a just and true account thereof whenever required by said board of county commissioners, or by any provision of law, and shall deliver over to his successor in office or to any person authorized by law to receive the same, all moneys, books,

papers, and other things appertaining thereto, or belong·
ing to said office, then the above obligation to be void,
otherwise to be in full force and effect."

Section 3458 reads:

"Every officer elected or appointed under the laws of
the Territory, on going out of his office at the expiration
of his term thereof, shall deliver to his successor in of·
fice, all public moneys, books, records accounts, papers
and documents in his possession belonging or appertain·
ing to such office."

Sections 5689 and 5695 prohibit the county treasurer
from loaning the funds, and provide:

"SEC. 5689. If the county treasurer shall loan any
money belonging to his county, with or without interest,
or shall use the same for his own individual purpose, he
shall forfeit and pay for every such offense a sum not ex-
ceeding five hundred dollars nor less than one hundred
dollars, to be recovered in an action at law at the suit of
the Territory for the use of the county"

"SEC. 5695. If the county treasurer shall loan any
part of the public funds in his hands as such treasurer,
or shall discount any county warrant, either directly or
indirectly, by himself or through others, or shall fail to
produce any funds in his hands as such treasurer, when
demanded for counting, by the county clerk or board of
county commissioners, or shall fail to pay over any part
thereof at any time when required by law so to do, he
shall in addition to the penalties prescribed in this act,
be deemed guilty of a crime against the revenue, the
property of the Territory, and shall be punished as
provided for that offense."

According to these plain statutory provisions, the lia-
bility of a county treasurer is absolute, and cannot be
changed or modified upon the plea that the public funds
have been lost or stolen without any fault or negligence
on his part. The basis of this suit is the bond, which

is in the language of the statute. These various statutory provisions were undoubtedly intended by the legislature to hold the treasurer of public funds in this Territory to a strict accountability.

The supreme court of Colorado in 1897 decided this identical question, in the case of *Gartley v. People, supra.* The court in this case held that, in an action on an official bond of a county treasurer for public moneys collected by him, the fact that the moneys were deposited in a solvent banking institution, which afterwards failed, causing the loss of the funds, constitutes no defense. When it is taken into consideration that the Colorado statute in relation to the bond required of the county treasurer is identical with our statute, and that the provisions of our statute and the form of the bond are a copy of the Colorado law, the rule of construction laid down in the Gartley Case is especially applicable to the case at bar: In this case Chief Justice Hayt said:

"The bond is not essentially different from that passed upon by the supreme court of the United States in the case of *U. S. v. Prescott,* 3 How. 578. The statute fixing the form of the bond was enacted in territorial times, when the decisions of the supreme court of the United States upon statutory construction were controlling in this jurisdiction; and, by a familiar rule, in adopting the statute we did so with the construction theretofore placed upon it. It is urged that the force of the decision in the Prescott Case was practically destroyed by a subsequent act of congress, and that we should therefore favor a less strict rule of accountability. In other words, we are asked to construe something into the statute which is not there. As in that case an act of congress was found necessary to give relief, so here relief must come from the legislature, and not from the courts."

In *Bush v. Johnson Co., supra,* the supreme court of Nebraska held:

"The duty imposed on a county treasurer by law, and assumed by him, of safely keeping and accounting for and turning over the public funds which come into his hands by virtue of his office, is an absolute one. And, where his bond is conditioned for the faithful performance of the duties of the office by him, the sureties on the bond are bound and liable in like manner, and their responsibility is the same as that of their principal; and it will be no defense for either of the parties, in an action on the bond to recover public funds, predicated on an alleged failure of the treasurer to account for or pay them over, that the funds have been lost or stolen without the fault or negligence of the treasurer."

In *State v. Moore, supra,* the defendant, who was county treasurer, answered that he ought not to be held upon his bond, because, Mississippi county "being overrun with tramps, thieves, robbers, public enemies, the money could not be safely kept in said county," and that for the purpose of keeping it safely he deposited it, to his credit as treasurer, in a bank in St. Louis, which failed, whereby the money was wholly lost. In this case the supreme court of Missouri said:

"Such an answer as this, we think, in insufficient to shield defendant from liability, in any view which can be taken of the case. If the obligation assumed by defendant in his bond, to deliver over to his successor in office all money belonging to the county, can only be met or discharged by making such delivery or payment, it is clear that the facts set up in the answer, and admitted to be true, constitute no defense. That the above rule is the correct one, governing in such cases, is established by the following authorities: (Citing *State v Powell,* 67 Mo. 395, and the various decisions of the supreme court of the United States.) If, on the other hand, under the rule laid

down in the case of *U. S. v. Thomas*, 15 Wall. 337, the defendant is to be regarded as a bailee, and exempt from liability to pay when the loss is occasioned by the act of God or a public enemy, he would still be liable under the facts stated in the answer, because they show that the loss was not occasioned in either of these ways. The tramps, thieves, and robbers which it is alleged overrun Mississippi county, while they are enemies to the peace and safety of the public, and social order, they are not public enemies, in the legal sense of these words. By enemies is to be understood public enemies, with whom the nation is itself at open war, and not merely robbers, thieves, and other private depredators, however much they may be deemed, in a moral sense, at war with society. Losses, therefore, which are occasioned by robbery on the highway, or by the depredations of mobs, rioters, insurgents, and other felons, are not deemed losses by enemies, within the meaning of the exception."

In *Rose v. Douglass Tp., supra,* the supreme court of Kansas said:

"A township treasurer, by accepting the office, assumes upon himself the duty of receiving and safely keeping the township money, and of paying it out according to law, and it is no defense for such treasurer or his sureties, when sued upon the official bond for a balance unpaid, that he kept the township money on deposit in a bank, with the knowledge and consent of the township board; that the bank suspended; that the clerk of the township filed a claim with the assignee of the bank for the township money, and received a certificate therefor; that subsequently a dividend was paid, and accepted by the township, which, however, left the balance due from the treasurer sued for."

A few of the state courts have declared the rule to be that a public officer who receives money by virtue of his office is a bailee, and that the extent of his obligation is

—24

imposed by law; that, when unaffected by constitutional
or legislative provisions, his duty and liability are meas-
ured by the law of bailment. This rule has been declared
by the courts of Montana, Wyoming, Maine, Alabama,
South Carolina, and California. The counsel for plain-
tiff in error contends that the county treasurer, under
the laws of this Territory, is a bailee of the public,
whose bondsmen assume only a liability for failure to
faithfully and diligently discharge the duties of his office.
And in support of this doctrine the following cases are
cited: *McClure v. Board*, 19 Colo. 122, 34 Pac. 763; *Wilson
v. People*, 19 Colo. 199, 34 Pac. 944; *City of Livingstone v.
Woods*, (Mont.) 49 Pac. 437; *State v. Gramm*, (Wyo.) 52
Pac. 533; *Inhabitants of Cumberland Co. v. Pennell*, 69 Me.
357; *State v. Copeland*, (Tenn. Sup.) 34 S. W. 427; *State
v. Houston*, 78 Ala. 576; *City of Healdsburg v. Mulligan*,
(Cal.) 45 Pac. 337.

In the case of *McClure v. Board, supra,* an attempt was
made to trace public moneys collected by the treasurer
into the purchase of certain property, for the purpose
of having a trust declared and enforced against such
property. In determining this question it became neces-
sary to investigate the relationship that a county treas-
urer holds to the money which comes into his hands
by virtue of his office, and the court said: "We think
that, under the provisions of our statute relating to a
county treasurer, the money collected and received by
him belongs to the county, and that he holds a fiduciary
relationship thereto that constitutes him a bailee with
express and extraordinary liability." As this declara
tion is immediately followed by the statutory require-
ments of his bond, it would appear that the enlarged

liability imposed was based to some extent, at least, upon the condition of his bond. The opinion is·a direct authority for the doctrine. that the relationship of the treasurer to the public money collected by him in his official capacity is not that of a bailee at the common law.

The question presented in the case of *Wilson v. People, supra,* was as to the liability of the clerk of the district court for moneys of private litigants which had been deposited with him to abide the result of the suit. No question was then before the court with reference to the liability of a public officer for public moneys received by him. The conclusion reached in the Wilson Case was, without doubt, correct, but in the argument certain expressions were used with reference to the bonds of public officers which should have been confined strictly to the facts of the case then under consideration.

In the case of *City of Livingstone v. Woods, supra,* decided by the supreme court of Montana June 5, 1897, it was held that where a city treasurer, pursuant to statute of 1887, requiring him to deposit the funds of the city, exercised prudence in the selection of a bank of good standing in which to deposit the funds, and was free from any negligence in permitting them to remain there, he was not liable for loss of the funds by the failure of the bank. In this case, not only the statute, but the ordinance of the city, required the city treasurer to deposit the money or funds in a bank. In deciding this case the supreme court of Montana followed the doctrine announced in the case of *Wilson v. People, supra,* and the case of *McClure v. Board, supra.* When this decision was rendered the court evidently had no knowledge

of the decision of the supreme court of Colorado in the case of *Gartley v. People, supra,* which was decided June 1, 1897.

The case of *State v. Gramm* was decided by the supreme court of Wyoming on March 10, 1898. That was an action by the state of Wyoming against the state treasurer upon an official bond. The facts admitted by the pleadings and stated in the reserved questions presented the general question whether the state treasurer, under the statutes relating to that officer, and the bond executed by him, was liable for public funds in his possession which had been lost by reason of the failure of a bank in which he had deposited them for safe-keeping; he being without any fault, blame, or negligence. The conditions of the bond sued upon in that case were as follows: "Now, therefore, if the above bounden, Otto Gramm, shall well, truly, and justly account for all moneys coming into his hands by virtue of his said office as treasurer of the state of Wyoming, and shall faithfully and truly perform all the duties of his said office, then this obligation shall be void; otherwise the same shall remain in full force and effect." The court held in this case that no recovery could be had on the bond, the treasurer not being chargeable with negligence or fraud. In this case the court followed the doctrine laid down in the Montana case, and in the case of *Wilson v. People, supra,* and the case of *McClure v. Board, supra.* No reference is made in this opinion to the later decision of the Colorado court in the case of *Gartley v. People, supra* Evidently this later decision of the Colorado court was not called to the attention of the Wyoming court.

We cannot assent to the doctrine laid down in the

Wyoming and Montana cases, which holds that a public officer, intrusted with public funds, and required to give a bond for the faithful performance of his official duty, is a mere bailee of the money—bound, *virtute officii*, to exercise good faith and reasonable skill and diligence in discharge of the trust confided in him. Our conclusion, then, on this proposition, is that, in an action on an official bond of a county treasurer for public moneys collected by him, the fact that the moneys were deposited in a solvent banking institution, which thereafter failed, resulting in the loss of the funds without any fault or negligence on the part of the treasurer, constitutes no defense to the action. And hence the trial judge properly sustained the motion to strike out that portion of paragraph 3 of defendants' answer which pleaded this defense. Whether a county treasurer would be relieved from liability upon his official bond on account of a loss occasioned by the act of God or the public enemy without any fault or negligence on his part is a question not raised in this case, and therefore not necessary to decide.

It is contended by counsel for plaintiffs in error that the petition fails to state facts sufficient to constitute a cause of action against the defendants, and hence the general demurrer to the petition should have been sustained. No authorities are cited by counsel in support of this contention. We have carefully examined the petition, and think it states a good cause of action. And hence the demurrer was properly overruled by the trial court.

But one more question remains to be considered in this case, which is argued in the brief of plaintiffs in

error, and that is that it was error to order and submit the case to a referee to be tried, over the objections of the defendants, who demanded a trial by jury. The court made a reference in this case, under section 304 of the provisions of our Civil Code, which reads: "When the parties do not consent, the court may upon the application of either, or of its own motion, direct a reference in either of the following cases: (1) Where the trial of an issue of fact shall require the examination of mutual accounts, or when the account is on one side only, and it shall be made to appear to the court that it is necessary that the party on the other side should be examined as a witness to prove the account, * * in which case the referee may be directed to hear and report upon the whole issue, or upon any specific question of fact involved therein, or, (2) where the taking of an account shall be necessary for the information of the court before judgment, in cases which may be deter mined by the court, or for carrying a judgment into effect, or, (3) where a question of fact other than upon the pleadings shall arise upon motion or otherwise in any stage of an action."

The first clause of this section includes two classes of cases—first, where the trial of an issue of fact shall require the exanimation of mutual accounts; second, where an issue of fact is joined upon an account pleaded on one side only, and it shall be made to appear to the court that it is necessary that the party on the other side should be examined as a witnesss to prove the account. These two classes include the same matter formerly cognizable in courts of equity, and in such cases the parties were not entitled, as a matter of right, to a trial

by jury. (Story, Eq. Jur. secs. 437-459; *McMartin v. Bingham*, 27 Iowa, 236.)

And the refusal to submit the case to a jury was not in contravention of the seventh article of the amendment to the constitution of the United States, which provides that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." (Story, Const. Lim. sec. 1768; *Edwards v. Elloitt*, 21 Wall. 532; *Light v. Bank*, 2 Okla. 543, 37 Pac. 1075.)

We think the questions involved in this case come clearly within the purview of the statute, and that the trial court committed no error in making the reference and in denying defendants' demand for a trial by jury. The judgment of the district court is therefore affirmed.

Tarsney, J., having presided in the court below, not sitting; all of the other Justices concurring.