### BENTON et al. v. STATE ex rel. PRUET, County Attorney, et al.

No. 26115.   Nov. 5, 1935.

Rehearing Denied Nov. 26, 1925.

Williams & Williams, for plaintiffs in error.

Victor Eckler and Earl Pruet, for defendants in error.

CORN, J. The plaintiffs in error will hereafter be referred to as the defendants, and the defendants in error will be referred to as the plaintiffs, as they appeared in the trial court.

Allegations of the petition are, in brief, that the defendant Benton, from and after the first of July, 1929, was the duly qualified, elected, and acting county treasurer of Jefferson county; that as such officer he made, kept, and maintained a deposit of funds coming into his hands as said county treasurer in the First State Bank of Ringling, Okla., and that on April 13, 1931, said bank was by the bank examiner of the state of Oklahoma declared insolvent; was taken over by said officer for the purpose of liquidation; that at the closing of said bank the county treasurer held warrants of Ringling Independent school district No. 14 of Jefferson county, Okla., as security for said deposit, as follows: For the fiscal year 1927-1928, $12,288.45; fiscal year 1928-1929, $6,544.15, and for the fiscal year 1929-1930, $7,255.99, all of which he, as said treasurer, had accepted and held in violation of the depository laws of the state of Oklahoma; that said deposit was kept and maintained in the First State Bank of Ringling in violation of the depository laws of the state of Oklahoma, in that E. J. Bean, who became county commissioner of said county in July, 1929, the same time that G. M. Benton became county treasurer aforesaid, was a stockholder and a member of the board of directors of said bank; that said G. M. Benton accepted and held said warrants as security in violation of the depository laws of the state of Oklahoma; for the further reason that said securities had not been approved by the county judge and county attorney of said county as required by law; that a portion of said funds were so deposited and kept on deposit in said bank in further violation of the depository laws of the state for the further reason that said deposit was in excess of the capital stock and surplus of the bank; that said deposit was further in violation of said statutes for the reason that the same was to be kept and maintained in excess of the approved and legally accepted security therefor; that said acts upon the part of said treasurer constituted a breach of the conditions of the official bond of said G. M. Benton, which makes him liable and strictly accountable to the county for the funds so kept on deposit in said bank.

The defendants, for their answer, admit that Earl Pruet is county attorney and that Benton is county treasurer; that the bond was executed and delivered as alleged, and that it became the duty of the treasurer to receive and deposit all moneys in the hands of his predecessor, and to deposit, pay, and account for the same in accordance with the statutes. They also admit keeping funds of the county on deposit in the First State Bank of Ringling, Okla.

Defendants deny that E. J. Bean was a member of the board of county commissioners and at the same time a stockholder and director in the First State Bank, and that if such fact were true, it was known to the board of commissioners, and it became and was the duty of said board and each member thereof to notify the county treasurer of said fact, and it was further the duty of said board to have canceled and revoked the order theretofore made by them designating said bank as an official depository of county funds.

That on July 1, 1915, the board of commissioners of Jefferson county made an order designating the First State Bank of Ringling, Okla., as a county depository, which order was duly entered in the minutes of the journal of said county commissioners, being journal 2, and recorded at pages 124 and 125 of said journal, a true copy thereof being attached to and made a part of the answer.

That said order designating said bank as such depository has never been canceled or revoked.

They deny that the deposits made by Benton in said bank constitute a breach of the conditions of his official bond, but say, on the other hand, that such deposits were lawfully made by him, and made in conformity with law and the order of the county commissioners.

Defendants further allege that the board of commissioners was kept fully informed as to the amount of funds on deposit in said bank and of the security held therefor, and that said board, nor any member thereof, ever complained of the fact that such deposits were being made, nor of the kind, character, or description of the security being taken therefor, but that it did approve the same, or if it failed to approve such deposit it failed to notify the defendant Benton, or his bondsman, or either of them, of such fact, and that the board of commissioners is now estopped from claiming or asserting that said deposits were made or said securities accepted without its knowledge, consent, or approval.

Defendants further allege that the greater portion of the funds of the county on de-

posit in said bank were deposited in said bank by the predecessor of Benton, and that security consisting of warrants of Independent school district No. 14 of Jefferson county, Okla., were hypothecated to secure deposit, and that the defendant Benton believed, and had every reason to believe, that said deposits were lawfully made, and that the securities given to secure the same had been approved by the proper authorities, including the board of commissioners. That if said deposit and securities were not proper, it was the duty of the board of commissioners to have called the attention of the defendant to such fact, and having failed to do so, it is thereby estopped from claiming or asserting that such deposits were wrongfully made and that the collateral taken to secure the same was illegally hypothecated.

Further answering, defendants say they are not informed as to whether the warrants pledged as security for the deposit in said bank have been approved by the county judge or county attorney of Jefferson county, and they therefore deny the allegations with reference thereto. However, they say that whether said warrants were approved by the county judge or county attorney is immaterial for the reason that the statutory requirement of such approval is only to determine whether such warrants were the valid obligation of the municipality issuing the same, and, such fact having been determined in an action entitled State of Oklahoma ex rel. G. M. Benton, County Treasurer of Jefferson County, v. Board of Education of the Town of Ringling, and being case No. 6217 in the district court of Jefferson county, state of Oklahoma, the lack of such approval becomes immaterial.

Defendants deny that it was a violation of the statutes of the state for Benton to deposit funds in said bank, and deny that by reason of such deposit he and his bondsman became insurers to the county thereof.

Defendants admit that on April 13, 1931, Benton, as county treasurer, had on deposit in said bank the sum of $27,498.35, and that he had as security therefor the warrants described in the petition. They admit that on April 13, 1931, said bank was found to be insolvent, and that the Bank Commissioner is now liquidating the same, but they deny that Jefferson county will sustain any loss by reason of its deposit in said bank.

They deny that the act and conduct of said G. M. Benton constitute a violation of the conditions of his official bond.

Defendants deny that any deposit was made in said bank to an amount in excess if its capital stock and surplus.

Further answering, defendants say that there is a defect of parties plaintiff, in that the board of commissioners of Jefferson county, Okla., is a proper and necessary party to the action, and that Earl Pruet, either in his own capacity or as county attorney, or as relator for the state of Oklahoma, has no power or authority to bring or maintain the action in his own name, or in any other name, except in the name of the board of county commissioners of Jefferson county, Okla.

Defendants further say that by reason of the fact that the board of commissioners is a proper and necessary party to plaintiff's cause of action, if any, and said suit is being maintained for and on behalf of Jefferson county, that in those instances in which said board would be estopped as herein alleged and pleaded, such estoppel will, and should be, applied to the nominal plaintiff herein.

Defendants deny generally all allegations of the petition and the amendment thereto not specifically admitted.

For reply to the answer, plaintiff denies generally all the allegations therein contained. He alleges, further, that on October 4, 1933, Benton was checked out of his office as county treasurer by the board of commissioners, and that upon said date he failed to account for said deposit of $27,498.35, as required by law, and that the failure to so account constitutes a breach of his official bond.

A jury was waived, the case was tried to the court, and judgment rendered in favor of the plaintiff and against the defendants for the sum of $25,063.30.

The finding of facts by the court is as follows:

"Now on this the 17 day of July, 1934, the above matter having come on for hearing in its regular assignment on said day, the same being one of the days of the March, A. D. 1934, term of the district court of said county and state, and the court having heard the evidence and argument of counsel, hereby makes the following finding of fact and conclusion of law:

"(1) The court finds that the said G. M. Benton, county treasurer and the defendant herein, maintained a deposit in the First State Bank of Ringling, Okla., such deposit as was on deposit at the time he the said

G. M. Benton was inducted into the office of the county treasurer, the amount of same being shown in the agreed statement of facts herein, and subsequently made additional deposit of funds in said bank the amount of which is shown in the agreed stipulation of facts, and in the evidence herein; that said deposits so kept and maintained and so made by the said G. M. Benton in said bank were in violation of the statute governing the deposits of funds by the county treasurer, for the reason that E. J. Bean, a member of the board of county commissioners, during all the times involved herein, was also a stockholder and director in said First State Bank of Ringling, during all the time involved herein.

"(2)   The court further finds that the said G. M. Benton did not have actual notice or knowledge of the fact that the said E. J. Bean was a stockholder and director in the First State Bank of Ringling, Okla., until after April 13, 1931.

"(3)   The court further finds that during his term of office the said G. M. Benton accepted as security for said deposits, warrants issued by Independent school district No. 14 of Jefferson county, Okla., for the fiscal year 1927-1928 in the sum of $12,228.-45; warrants issued by Independent school district No. 14 of Jefferson county, Okla., for the fiscal year 1928-1929 in the sum of $6,-544.15; and warrants issued by Independent school district No. 14 of Jefferson county, Okla., for the fiscal year 1929-30, in the sum of $7,255.99; and that the said G. M. Benton so accepted said warrants without the knowledge and consent of the board of county commissioners of Jefferson county, Okla., and without the approval of the county judge and county attorney of said county, and that in so accepting said warrants as security he, the said G. M. Benton, did so in violation of the statute governing the deposit of county funds by the county treasurer, in that the county treasurer has no authority to accept security for deposits of county funds, but that said authority to accept security for such deposit is vested in the board of county commissioners of said county, and for the further reason that under the statute governing the deposit of county funds, said security may not be accepted until after the same has been approved by the county judge and county attorney of said county.

"(4)   The court further finds that the county treasurer, G. M. Benton, did not at any time make a formal report to the board of county commissioners while in session, as to the securities he so held; the court finds that the said G. M. Benton did not make any report to the board of county commissioners while in regular session as to the securities he so held; the court finds, however, that the said G. M. Benton did make oral statements at various times to the individual members of the board of county commissioners as to the amount of money he had on deposit in the First State Bank of Ringling, Okla., and the character and amount of securities pledged with him to secure said deposits from the 1st day of July, 1929, to the date the bank closed, and that said board made no objection or complaint thereto; that said reports so made do not constitute in law a proper record to the board of county commissioners as to the status of said deposits and securities pledged to secure the same.

"(5)   By reason of the findings of fact and conclusions of law herein above stated, and by reason of the evidence and stipulation of facts agreed upon by the parties herein, the court finds that the said deposits were so kept, made, and maintained by the said G. M. Benton in violation of the statutes governing deposits of county funds in said bank, and that in so depositing said funds in violation of the law, he, the said G. M. Benton, became an insurer to the county for the funds so deposited in said bank, and on deposit in said bank when the bank became insolvent on the 13th day of April 1931; and that when the said G. M. Benton failed to account for said funds when he was checked out of office, he, the said G. M. Benton, as a matter of law, was liable to the county for said funds.

"Eugene Rice,
"District Judge."

The record reflects that the finding of facts by the trial court is substantially correct.

The defendant Benton in his brief presents the issues under ten propositions. We do not see that it would serve any useful purpose to discuss them separately, as all of the propositions with any merit except one, which we will discuss later, are whether the defendant in making and maintaining said account in violation of the depository laws of the state became an insurer to the county, and is strictly accountable to the county for the money lost by reason of the failure of the First State Bank of Ringling, where the money alleged to have been lost was deposited.

Prior to the passage of the so-called depository law of this state, the county treasurer was held to be the insurer of all funds which came into his hands as such treasurer, and in case any of such funds were lost in the failure of a bank, in which the same were deposited by the county treasurer, the county treasurer was held liable to the county for any sum of money lost as a

result of the failure of the bank in which the same was deposited.

The case of Van Trees et al. v. Territory of Oklahoma, 7 Okla. 353, 54 P. 495, lays down the above rule. Quoting from the first syllabus of said case, we find the following language:

"In an action on an official bond of a county treasurer, the fact that the moneys were deposited in a solvent banking institution, which thereafter failed, resulting in the loss of the funds, without any fault or negligence on the part of the treasurer, constitutes no defense to said action."

In the opinion of the court in said case, at page 360, we find the following language used:

"The first rule is based upon the strict letter of the bond, and upon consideration of public policy. Under this rule there are no exemptions, unless it is so stated in express terms in the bond. In other words, public officers who are intrusted with public funds, and required to give a bond for the faithful discharge of their official duties, are not mere bailees of money, to be exonerated by the exercise of ordinary care and diligence. Their liability is fixed by the bond, and the fact that the money is lost or stolen without any fault or negligence upon their part does not release them from liability on their official bonds."

Now the above rule as laid down in Van Trees v. Territory of Oklahoma remained the rule governing the liability of county treasurers under their bonds until the passage of what is known as the depository laws of the state. These laws prescribed certain conditions that must be fulfilled before a deposit could be made, and after the adoption of such statutes, all of which are very similar, the county treasurer was relieved of liability for funds deposited by him only when the provisions of the depository laws had been complied with. After the passage of the first depository law, which was article 2, chapter 11, Session Laws of 1905, the court modified the rule laid down in the Van Trees Case.

In the second syllabus of the case of the Board of County Commissioners of the County of Kay, Oklahoma, v. Robert Dunlop, County Treasurer, 17 Okla. 53, 87 P. 590, we find the following rule:

"Where depositories for county funds have been designated by the board of county commissioners, and the bonds thereof approved, it becomes the duty of the county treasurer to use these depositories for depositing the county funds therein. It is, however, within the discretion of the county treasurer to fix the amount to be placed in any given bank, subject, however, to the provision that he shall not deposit an amount greater than the capital stock of such bank, nor greater than the bond given as security."

In the body of the opinion, at page 55, we find the following language:

"The statute referred to nowhere provides what amounts shall be deposited in any one or more of the depositories designated. It must, then, be held that when the county commissioners have designated what banks shall constitute the county depositories, and approved their bonds, they have performed their full duty under the act, and have no authority to specify what amount shall be deposited in any one or more given banks. When the depositories are designated, and their bonds approved, it becomes the duty of the county treasurer to use these banks as depositories for the county money in his hands, but it is left to his discretion to fix the amount to be placed in any given bank, subject, however, to the provisions that he shall not deposit an amount greater than the capital stock of such bank, nor greater than the bond given as security."

The above rule provides that the county treasurer is not liable for funds lost in a bank failure when the provisions of the depository laws had been complied with. However, in case the provisions of the depository law have not been complied with, the county treasurer cannot avail himself of the benefit afforded by such rule, but remains strictly liable and accountable as an insurer to the county for any such funds so lost. From a consideration of the portion of the rule, "and approved their bonds," laid down in this case, one of the essential requirements of said rule is that the bond to secure said deposits must have been properly approved as required by law. If the same was not properly approved, then the county treasurer would not be authorized to make and maintain a deposit in the bank designated as a depository. If the county treasurer makes such deposit without a bond having been approved as required by law, he will be stripped of the protection of the depository law and of the rule prescribed in the Dunlop Case, and would become the insurer to the county for any funds so deposited by him, and liable for the same on his official bond for the sum so lost as a result of the failure of the bank where the funds were deposited.

The case of Hinton et al. v. State ex rel. Neal, County Attorney, 57 Okla. 777, 156 P. 161, follows and enlarges upon the rule expressed in the Dunlop Case. We quote the

first syllabus of said case, which is as follows:

"That part of section 1540, Rev. Laws Okla. 1910 Ann., in reference to county depositories, applicable here, provides that: 'There shall not be deposited of such funds in any bank, at any one time, a greater amount than the capital stock of said bank. * * * Before directing or authorizing the deposit of any such funds aforesaid, the board of county commissioners shall take from each such bank a bond in a sum equal to the largest approximate amount that may be deposited in each, respectively, at any one time. * * * The condition of said bond shall be, that such deposit shall be promptly paid on the check or draft of the treasurer of such county, and the bondsmen of said treasurer shall not be liable for such deposit.' Held, that the sentence, 'the county commissioners shall take from each such bank (depository) a bond in a sum equal to the largest approximate amount that may be deposited in each respectively, at any one time', was intended to, and does by implication, limit the amount that may be legally deposited in each bank, respectively, to the amount of the depository bond; and, held, further, that if the county treasurer deposits the funds of the county in such depository in an amount in excess of such bond and the same is lost by the failure of the bank, the treasurer and his surety are liable for the amount so lost in excess of the depository bond."

And again from the body of the opinion, at page 785, we find the following language:

"The literal language of the statute seems to limit the amount of deposit only to the amount of the capital stock of the bank, and further provides that 'the bondsmen of said treasurer shall not be liable for such deposit.' The foregoing statements are plain and unambiguous. The part of the statute which seems to be uncertain is found in the following sentence:

" 'Before directing or authorizing the deposit of any such funds aforesaid the board of county commissioners shall take from each such bank a bond in the sum equal to the largest approximate amount that may be deposited in each, respectively, at any one time.'

"The deposit had already been limited to the amount of the capital stock. It might be asked if it was not the intention to limit it to the amount of the depository's bond. Why did they mention a bond in a 'sum equal to the largest approximate amount that may be deposited in each (depository) respectively, at any one time'?

"To the writer hereof it seems very uncertain and entirely doubtful, but we are not left entirely without authority or precedent on the question. The statute under consideration was passed in 1905. In 1906, the Supreme Court of the territory had before it an original proceeding for mandamus, brought by the board of county commissioners of Kay county, against the county treasurer, to compel him to deposit a certain percentage of the funds in his hands as county treasurer in certain banks which had theretofore been designated by the board as county depositories, under the statute here involved. In disposing of that case (Board of County Com'rs v. Dunlop, 17 Okla. 53, 87 P. 590), the court, speaking through Mr. Justice Pancoast, all the justices concurring, took occasion to say:

" 'When the depositories are designated, and their bonds approved, it becomes the duty of the county treasurer to use these banks as depositories for the county money in his hands; but it is left to his discretion to fix the amount to be placed in any given bank, subject, however, to the provisions that he shall not deposit an amount greater than the capital stock of such bank, nor greater than the bond given as security."

On reading this decision, we come to this conclusion: If the bank had been designated as a depository bank by the board of county commissioners, before the county treasurer is authorized to deposit funds in the same, a depository bond must be taken by the county commissioners and approved by them, and if no such bond is so taken and approved, then the county treasurer would not be authorized to make any deposit in said bank. If the county treasurer does make such deposit, and said deposit is lost by failure of the bank, he will be strictly liable as an insurer to the county for the money so lost, just the same as if he had deposited money in said bank in excess of security accepted and approved as required by law.

In the opinion of this court in State ex rel. Adair County Commissioners v. McCloud, 64 Okla. 126, 166 P. 1065, the fourth syllabus reads as follows:

"A county treasurer, who in good faith and without notice of any lack of responsibility in the bank, or defect in the bond, deposits his official funds in a duly designated county depository, which has given a bond, legally approved and accepted by the county commissioners, and which bond, by its terms, is in force during the period of such deposit, is not liable for loss of funds, within the amount of said bond, occasioned by the failure of the depository."

In the body of the opinion, at page 131, we find the following:

"This question has also been before this court, and the original opinion filed in this cause, holding the treasurer liable, is in conflict with a previous decision of this court in the case of Hinton et al. v. State ex rel. Neal, County Attorney, 57 Okla. 777, 156 P. 161. In that case we held, in an opinion by Commissioner Robberts, that the treasurer and his bondsmen were not liable for funds deposited in the depository bank within the amount of the bond taken and approved by the county board, but were liable for all such funds deposited in excess of the amount of the bond given by the depository bank. It was there said:

" 'It is well settled by authority and on principle that, when such depositories have been designated according to law, neither the county treasurer nor his bondsmen are liable for the loss of funds deposited therein, so long as the treasurer keeps within the requirements of the law. In line with that proposition, it is evident that the defendants in this cause would not be liable for the funds deposited up to the amount of the bond, which was $8 000.'

"It follows that the opinion filed in this cause on December 12, 1916, should be modified in accordance with the views herein expressed, and the judgment of the trial court affirmed."

From a consideration of the language of this decision, it is clear that the county treasurer is protected from liability for funds lost in a bank failure when, and only when, security has been accepted and approved by the board of county commissioners.

This decision does not hold that the county treasurer can accept such security; the acceptance by the county treasurer of such security would clearly be an act outside of his authority and not one contemplated by the depository law, and would afford him no protection under the rule as laid down in this case.

This court in the case of Joint School Dist. No. 105 et al. v. First Nat. Bank of Kingfisher et al., 125 Okla. 243, 257 P. 318, follows the rule heretofore cited, for in the opinion, at page 244, we find the following language:

"The county treasurer is required to give an official bond, but where he has in good faith deposited the public funds in the depository bank designated by the board of county commissioners and bonded, as required by law, neither he nor his official bondsman is liable for the loss of funds so deposited occasioned by the failure of the depository bank. State ex rel. v. McCloud, 64 Okla. 126, 166 P. 1065."

This case clearly contemplates that securities for deposit of county funds must be accepted and approved by the board of county commissioners; clearly contemplates that unless the county commissioners accept the security, the same will afford no protection to the county treasurer for funds lost by reason of a bank failure.

The case of Board of County Commissioners of Grant County v. Soucek et al., 128 Okla. 151, 261 P. 947, which passes upon section 5727, C. O. S. 1921 (7428, O. S. 1931), and was the depository law then in effect, lays down the following rule in the third paragraph of the syllabus:

"Where a county treasurer deposits in a bank the county's funds in an amount greater than the amount of the bond required by the board of county commissioners as provided by section 5727, C. O. S. 1921, he does so at his own peril and as to such excess amount he becomes an insurer to the county and will not be relieved from the obligation to answer to the county if such funds are lost by the failure of the bank."

And in the body of the opinion at page 153 we find the following:

"We cannot agree, however, with the view taken by the trial court as to the measure of defendant's liability as applied to the $2,000 deposited in the bank over and above the amount of the depository bond. Whatever may be the relaxation of the duty and responsibility imposed upon the county treasurer by the enactment of the law providing that the board of county commissioners shall select the depository and require the bond, the treasurer, as the trustee of public funds, is held to the strictest accountability for the safekeeping of the funds coming into his hands and not disposed of in strict conformity to the provision of the statute, and will not be relieved from liability if he fails to follow its provisions.

"Defendant's excuse for depositing the $2 - 000 in the bank over and above the amount of the bond required is that the other depositories had deposited therein the full amounts of their bonds, or securities deposited, but the latter clause of section 5727, C. O. S. 1921, supra, providing that nothing in the depository law should prohibit the county treasurer from depositing funds in banks outside of his county, in cases of emergency. by requiring such banks to furnish the same security as the designated depositories furnished. Doubtless, this clause of the statute was intended to cover just such an emergency as arose in the instant case, and, under the rule laid down in Hinton v. State, 57 Okla. 777, 156 P. 161, following the rule laid down in County Commissioners v. Dunlop. 17 Okla. 53, 87 P.

590, the defendant must be held liable for this $2,000 deposited.

"It is our judgment, therefore, that the court erred in failing to so instruct the jury, and for that reason the judgment of the district court is, in this respect, reversed and remanded with instructions to dispose of the case in conformity to the views herein expressed, and the judgment of the trial court is, in all other respects, affirmed."

This case, we feel, contains the fullest statement of the law that has yet been laid down with reference to the liability of the county treasurer, and is directly in line with the plaintiff's contention in the instant case.

If the county treasurer would avail himself of the protection afforded by the depository law and avoid the strict accountability prescribed in the Van Trees decision, he must see that all of the requirements of the depository law have been fulfilled, and if he fails to follow the provisions of the depository law, he will not be relieved from liability.

Section 5727, C. O. S. 1921, was later amended by chapter 88 of the Session Laws of 1925, which was the law governing the deposit of funds by the county treasurer in the case at bar, and which reads as follows:

"Section 1. That section 5727, Compiled Oklahoma Statutes, 1921, be, and the same is hereby amended to read as follows:

"'Section 5727. In all counties, the county treasurer shall deposit daily all the funds and money of whatsoever kind that shall come into his possession by virtue of his office as such county treasurer in his name as such county treasurer in one (1) or more banks located in the county and designated by the board of county commissioners as the county depositories; provided, that there shall not be deposited of such funds in any one (1) bank at one (1) time a greater amount than the capital stock and surplus of said bank. Such bank shall receive all moneys, checks or drafts at par and pay interest on the average daily realized balances at the rate of not less than three (3%) per cent. per annum, and shall pay the same monthly to the county treasurer. Before directing or authorizing the deposit of any such funds aforesaid, the board of county commissioners shall take from each such bank a surety bond of some surety company authorized by the proper authorities of the state of Oklahoma to do business in said state, in a sum equal to the largest approximate amount that may be deposited in each respectively, at any one (1) time; said surety bond to be uniform and prescribed by the Attorney General of the state. Provided, that in lieu of said surety bond or in addition thereto, security may be taken consisting of United States bonds, state bonds or warrants, county bonds or warrants, or other bonds or warrants issued by any municipality under authority of and in compliance with the statutes of Oklahoma; provided, that all said warrants shall have been issued pursuant to a legal appropriation. All surety bonds taken under the provisions of this act shall bear the approval of the county attorney and the board of county commissioners and all securities accepted in lieu of surety bonds shall bear the approval of the county judge and the county attorney. The county commissioners shall provide for the county treasurer a safe and secure receptacle and place for the safekeeping of said securities; provided, that if the county treasurer accepts any of the securities mentioned herein in lieu of a surety bond. It shall be unlawful for said county treasurer to leave said securities in the custody of or deposit same in the bank furnishing the same, but shall keep the same in his custody at the county court house, where the same shall be subject to inspection at any time, or in some safe place designated by the board of county commissioners, and the State Examiner and Inspector when examining a county treasurer's records shall in addition to his other duties examine said office with a view of seeing that the provisions of this act are complied with, and it shall be the duty of said State Examiner and Inspector, if he shall find that the provisions of this act are being violated, to at once file a written report of such condition with the county attorney of said county; and provided, further, that said securities and surety bond shall be at all times in the custody and under the control of the county treasurer. The condition of said bond shall be that such deposit shall be promptly paid on a check or draft of the treasurer of such county, and the bondsmen of such treasurer shall not be liable for such deposit. And such banks shall on the first Monday of each month file with the county clerk of such county a statement of the amount of money on hand belonging to the county at the close of business each day during the previous month and the amount of interest accrued thereon to such date. Provided, that nothing in this act shall be construed to prohibit the county treasurer from depositing funds of the county in banks outside of the county in cases of emergency and when such bank shall place with the county treasurer the same class of security as hereinbefore provided. And provided, further, where local banks or banks outside of the county refuse to put up the securities hereinbefore provided, then the county treasurer is hereby authorized to deposit any surplus funds in his hands with the State Treasurer as official depository and the State Treasurer as official de-

pository is hereby authorized to receive said county deposits, the same to be withdrawn on the voucher of the office depositing the same, and the interest earned on said deposit to be credited to the account earning the same. It is hereby made unlawful for any of the county's funds to be deposited in any bank in which the county treasurer or any member of the board of county commissioners shall be the owner of any stock or otherwise pecuniarily interested.'

"Section 2. Any county treasurer violating any of the provisions of this act shall be guilty of a felony and upon conviction shall be punished by confinement in the State Penitentiary for a term not less than one (1) year nor more than four (4) years.

"Section 3. It being immediately necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist, by reason whereof this act shall take effect and be in full force from and after its passage and approval. (Approved April 2, 1925)"

It will be seen from a reading of the above statute that before a county treasurer is authorized to deposit funds in a bank, the board of county commissioners must accept or take security as provided for in said statutes for the protection of said funds. This does not contemplate such action upon the part of the county treasurer, and such action upon his part, not having authority under the depository statutes, would afford him no protection in case of a bank failure.

Said statute further provides that such securities as were held by the county treasurer in the instant case must have been approved by the county judge and the county attorney. Under the rule of this court heretofore submitted in full, we take it to be plain and unmistakable that if a county treasurer holds securities which have not been approved by the county judge and county attorney, the same would afford him no protection in case of bank failure.

It is further provided in said statute that it shall be a violation of the law to deposit funds in a bank in excess of the capital stock or surplus of said bank, and under the rules heretofore laid down by this court, the county treasurer would be strictly accountable for any funds so deposited in excess of the capital stock and surplus of the bank.

Said statute further provides that it is unlawful for a county treasurer to deposit funds in a bank in which the county treasurer or any member of the board of county commissioners is a stockholder or otherwise pecuniarily interested. This provision is made for the protection of public funds. The lawmakers evidently realized that it was not sound public policy and not a safe proposition from the standpoint of a county to allow the county treasurer to deposit funds in a bank in which a member of the board of county commissioners was a stockholder or pecuniarily interested, and we think it a necessary conclusion from the rules heretofore cited, and from the decisions of this court, that for such a deposit the county treasurer should and would be held strictly accountable for the loss of same by failure of such bank.

The law is well established by this court that a county treasurer must comply with each and all of the provisions of the depository statutes heretofore cited, and that when he fails to do so, he is stripped of any protection that might be afforded him by the provisions of said statutes and becomes strictly accountable as an insurer to the county for the funds so deposited.

The defendants contend that the county treasurer is in the position of bailee for hire to the county and that he is only required to exercise good faith and reasonable skill and diligence in the care of the county's funds intrusted to him.

From a reading of the authorities cited by the defendant in support of this proposition, to wit. Board of Commissioners v. Soucek, and State ex rel. v. McCloud, supra, we conclude that the county treasurer is in a position of the bailee for hire, if the provisions of the depository statutes have been complied with, but when the same have not been complied with, the county treasurer is no longer in the position of a bailee for hire and becomes strictly accountable and liable as an insurer to the county for any funds deposited not in strict compliance with the depository act.

Again quoting from the decision of Board of County Commissioners v. Soucek, cited by the defendant, which we have heretofore cited, to use the language of said decision, we conclude that whatever may be the relaxation of the duty and responsibility imposed upon the county treasurer by the enactment of the law providing that the board of county commissioners shall select the depository and require the bond, the treasurer, as trustee of public funds, is held to a strict accountability for the safekeeping of the funds coming into his hands and not disposed of in strict conformity with the statutes, and will not be relieved from liability if he fails to follow its provisions.

When a county treasurer fails to follow the provisions of the depository act and deposits county funds, he does so at his own peril and becomes insurer to the county and will not be relieved from the obligation to answer to the county for such funds if such funds are lost by failure of the bank.

In a recent opinion in the case of Berger v. City of Vinita, 170 Okla. 214, 40 P. (2d) 1, in the third paragraph of the syllabus this court held:

"City treasurer and her bondsmen to obtain benefit of depository acts as to city sinking fund must strictly comply with depository acts."

In view of the above authorities and reasoning, we conclude that when and if a county treasurer violates any of the provisions of the depository act, he is not only guilty of a felony, but he becomes an insurer to the county for any funds lost by reason of the bank failure.

The defendants contend there is a defect of parties plaintiff, in that the suit may not be maintained in the name of the state of Oklahoma on the relation of the county attorney for the use and benefit of the county commissioners and the county.

The general statute relative to suits brought by and against the county commissioners is 7364, O. S. 1931, and provides that such suits shall be maintained in the name of the board of county commissioners. However, in numerous instances this court has upheld suits brought in the name of the state on the relation of the county attorney for the use and benefit of the board of county commissioners.

The statute governing this particular kind of suit is a more recent statute and governs in its special field, same being section 7735, O. S. 1931, and is chapter 35 of the Session Laws of 1931, which amends section 5930, C. O. S. 1921, and provides in part as follows:

"* * * Action may be brought thereon in the name of the state for the use and benefit of the person or persons injured by a violation thereof."

We feel that the above statute has been complied with in the instant case. The statute says this suit shall be brought in the name of the state for the use and benefit of the person or persons injured. Jefferson county, through its representative board, the board of county commissioners, is the person injured. The suit is brought "In the name of the state," for the use and benefit of the person injured. The plaintiff is "The State of Oklahoma ex rel. Earl Pruet, County Attorney of Jefferson County, Oklahoma," and the petition alleges that the suit is brought "In the name of the State of Oklahoma and for the use and benefit of the Board of County Commissioners of Jefferson County, Oklahoma, and Jefferson County, Oklahoma."

It seems that the provisions of the applicable statute have been followed to the fullest extent. This suit is not brought in the name of the county attorney, as contended by defendants and as was done in the case of Dolezal, County Clerk, et al. v. Bostick, County Attorney, 41 Okla. 743, 139 P. 964. It was not filed in the name of Jefferson county, as was the case in Muskogee County v. Lanning & McRoberts, 51 Okla. 343, 151 P. 1054, cited by defendants. These cases are clearly not similar to the case at bar, and therefore not applicable.

Defendants further argue that had the suit been brought by the "Board of County Commissioners" as plaintiff, objections could have been raised by the defendants and evidence introduced which were not allowed in the instant case, and that this worked a prejudice to the defendants. A consideration of defendants' pleadings and evidence, and the arguments made in defendants' brief, will disclose that the defendants raised by pleadings and proof and submit in the form of arguments in their brief every argument that could have been made had the suit been filed as they now contend it should have been filed. We therefore fail to see why the defendants have suffered any prejudice by reason of this suit having been filed in the name of the state of Oklahoma on the relation of the county attorney for the use and benefit of the board of county commissioners of Jefferson county and Jefferson county.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and WELCH, JJ., concur.